Morse and others vs. Buffalo Fire and Marine Insurance Company.

---

MORSE and others vs. BUFFALO FIRE AND MARINE INSURANCE COMPANY.

(1–4) CONTRACTS: *Rules of construction—Policy of insurance.* (5) DAMAGES: *Discretionary power of Supreme Court, when exercised.*

1. A policy of insurance against fire, upon a steamboat, provides that "if gunpowder, camphene, spirit-gas, naptha, benzine or benzole, chemical, crude or refined coal or earth oils, are kept or used on the premises without written consent," the policy shall be void. In an action on the policy it appeared that *kerosene oil* was used to light the cabin and saloon of the boat after such policy was issued. *Held*, that this will not prevent a recovery.

2. Applying the maxim "*noscitur a sociis,*" and other rules of construc-

tion, the provision above recited is held to refer to "crude or refined coal or earth oils," similar to the coal or earth oils and other substances *specifically named*, in respect to their dangerous and inflammable character.

3. The fact that neither the plaintiff's agent nor the defendant understood the words recited as forbidding the use of kerosene for purposes of illumination, is of some weight in determining the meaning of such words, if otherwise doubtful.

4. When the intent of a contract is doubtful, conditions providing for forfeitures are to be construed strictly against those for whose benefit they were inserted.

5. The discretionary power to award to the party prevailing on a writ of error, damages beyond seven per cent. of the original judgment (2 Tay. Sts., 1646, § 47), will not be exercised unless it appears that the appeal was clearly frivolous, and that it was taken from sinister motives.

APPEAL from the Circuit Court for *Winnebago* County.

Action upon a policy of insurance to recover for the destruction by fire of the steamer Berlin City. The opinion states the case. Verdict for plaintiffs, and a new trial being refused, defendant appealed.

*Felker & Weisbrod*, for appellant.

*Gabe Bouck*, contra.

LYON, J. This is an action upon a policy of insurance issued by the defendant to the plaintiffs upon the steamboat "Berlin City," insuring the same against loss or damage by fire. The policy contains the following condition: "If gunpowder, camphene, spirit-gas, naptha, benzine or benzole, chemical, crude or refined coal, or earth oils, are kept or used on the premises without written consent, this policy shall be void." Kerosene oil was used to light the cabin and saloon of the boat after the policy was issued, and it is claimed that this was a violation of the above condition of the policy, and rendered the policy void. The circuit court held otherwise and directed the jury to return a verdict for the plaintiffs for the amount of the policy. It was admitted by the defendant, that the boat had been burned, and that if the plaintiffs were

entitled to recover any sum, they were entitled to recover the full amount of the policy.

The defendant has appealed to this court from the judgment against it, entered pursuant to such verdict.

It is conceded that the judgment should not be disturbed unless the use of kerosene oil on the boat, as aforesaid, invalidated the policy; and whether the use thereof had that effect by the terms of the policy, is the only question to be determined on this appeal.

We suppose it will not be disputed that naptha, benzine or benzole, and kerosene, are all " refined coal or earth oils," not differing in their nature, but only in the degree of inflammability, kerosene being much less inflammable than either of the others. From this it would seem to follow, that if a broad and general construction be given to the term " refined coal or earth oils," it must be held to include kerosene, and that the use of that article on the boat vitiated the policy and terminated the contract of insurance. But we are of the opinion that the term should not be so construed. It is used in connection with naptha and benzine or benzole, kerosene not being specifically named as one of the articles, the use of which will vitiate the policy. The object and purpose of the condition undoubtedly is to decrease the danger of loss by prohibiting the keeping or use of highly inflammable substances, such as naptha, benzine or benzole, upon the premises insured. The policy expressly enumerates those articles of that character which are more commonly used, as gunpowder, camphene, spirit gas, naptha, etc., and then, to fully carry out such purpose and object, and to protect the insurance company from the danger of loss by reason of the keeping or use of other articles of like character and equally dangerous, it specifies in general terms, as included in the prohibition, " chemical, crude or refined coal or earth oils." Hence, any article of like character and equally dangerous as those enumerated, although such article is not specifically named in the policy, is within the prohibition. Further than this, we

do not think the scope of these general terms in the policy should be extended.   In other words, we think that the maxim *noscitur a sociis* is applicable here, and that the term "refined coal or earth oils," as used in the policy, should be construed to mean only those articles or substances which are included in such general description and which are also as highly inflammable, and therefore as dangerous to the insured property, as naptha, benzine or benzole.   An illustration of the application of this maxim may be found in Broom's Legal Maxims, p. 451, which is so directly in point, that we feel justified in inserting it here entire.   It is as follows:

"One instance of the application of the maxim, *noscitur a sociis*, to a mercantile instrument may, however, be mentioned on account of its importance, and will suffice to show in what manner the principle which it expresses has been made available for the benefit of commerce.

The general words inserted in a maritime policy of insurance after the enumeration of particular perils are as follows; and of all perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of said goods and merchandizes, and ship, etc., or any part thereof.   These words it has been observed must be considered as introduced into the policy in furtherance of the objects of marine insurance, and may have the effect of extending a reasonable indemnity to many cases not distinctly covered by the special words; they are entitled to be considered as material and operative words, and to have the due effect assigned to them in the construction of this instrument, and this will be done by allowing them to comprehend and cover other cases of marine damage of the like kind with those which are specially enumerated, and occasioned by similar causes; that is to say, *the meaning of the general words may be ascertained by referring to the preceding special words.*"

So in the present case, the construction which we have given to the general words makes them operative to prohibit the keeping or use on the boat of articles not covered by the special

words of the policy, while at the same time by referring to the special words to ascertain the meaning of the general words, we give full force and effect to the former. A different rule of construction would render the special words entirely superfluous, for if the term "refined coal or earth oils" be construed in its broadest and most general sense, surely it includes naptha and benzine or benzole, and the special enumeration of these in the policy adds nothing to its obligations and does not in any manner affect the contract of insurance.

There are many other rules of law for the construction of contracts which are applicable to the question under consideration, and which, it is believed, demonstrate that we have correctly interpreted this contract of insurance. Brief mention will be made of some of them. 1. The contract should be construed in accordance with the intention of the parties to it. Aside from the general words employed therein, this policy contains nothing to show that kerosene was intended to be included in the list of prohibited articles. It contains, however, a stipulation that the insurance company shall not be liable for a loss caused by "explosions of any kind." This would, doubtless, in most cases of losses which originated by the burning of kerosene, relieve the company from liability therefor. It is difficult to perceive how a loss could thus originate without an explosion of greater or less force. This clause in the policy would seem to protect the company from the consequences of the improper or careless use of kerosene, and when considered in connection with the fact that kerosene is not specially named as one of the prohibited articles, it raises a presumption that the use of it was not intended to be prohibited. If we may look for the intent of the parties outside of the language of the policy; if it is admissible to ascertain that intent from the situation of the parties, the character of the property insured, and all of the attending circumstances, then it becomes perfectly apparent that neither the plaintiffs nor the agent of the defendant who negotiated for it the contract of

insurance, ever supposed for a moment that the use of kerosene on the boat for illuminating purposes, would terminate the contract and render the policy void. It was admitted on the trial that kerosene had been in general and universal use for illuminating purposes on boats, and in buildings outside of gas districts for ten years, and the agent of the defendant testifies that he did not understand when the contract was made that the use of kerosene was prohibited by the policy. The circumstances of the case show conclusively that the plaintiffs understood the policy as did the agent. Had the agent, pending the negotiations, informed the plaintiffs that the use of kerosene on their boat would destroy their insurance, does any one believe that they would have paid the premium and taken the policy? Were an insurance company to say to the public, in plain English, that the use of kerosene for illuminating purposes on premises insured by it, would destroy the insurance and forfeit the policy, we apprehend that such company would thereafter issue but few policies, and that future dividends to its stockholders would be exceedingly small.

2. If the language of the policy may be understood in more senses than one, it is to be interpreted in the sense in which the defendant, the insurance company, had reason to suppose the plaintiffs understood it. In that sense we believe we have interpreted it.

3. Even were it doubtful from the general tenor of the policy, and the relation of the parties, whether the term " refined coal or earth oils " was used in the policy in an enlarged or restricted sense, other things being equal, the restricted construction should be adopted as being most favorable to the plaintiffs, who in respect to the insurance company, stand in the position of promisees.

4. The contract should have a reasonable construction, reference being had to the circumstances under which it was made. These have already been mentioned and need not be repeated; were we to hold that the use of kerosene is prohibited by this

policy, could it not be successfully claimed on the same principle, that the use of matches on the boat, which are prepared with a detonating substance, composed largely of phosphorus, or the use of paints or varnish thereon, one of the component parts of which happens to be benzine, or some other form of "crude or refined coal or earth oils," is also prohibited, and that the use of either would vitiate the policy? Such a construction of the language of the policy would clearly be unreasonable, but no more so, in our opinion, than the construction contended for by the learned and ingenious counsel for the defendant.

5. When the intent is doubtful, conditions providing for forfeitures, (and such is the character of the condition of this policy) are to be construed strictly against those for whose benefit they were introduced.

6. The party to a contract who seeks to destroy its obligation by reason of an alleged breach of a condition precedent by the other party, cannot establish the existence of such a condition by inference or conjecture.

The terms of the contract must be clear and explicit in his favor." *Clinton v. The Hope Insurance Company*, 45 N. Y., 454.

A discussion of these principles and references to numerous cases sustaining them, will be found in the opinion of the court, by Mr. Justice Porter, in *Hoffman v. The Ætna Insurance Co.*, 32 N. Y., 405.

The foregoing considerations impel us to the conclusion that the judgment of the circuit court should be affirmed.

The counsel for the plaintiffs asks this court to exercise a power vested in it by statute, to award damages against the defendant beyond the seven per cent. per annum on the judgment, which the law gives in all cases. *Taylor's Statutes* 1646, § 47. This request is made upon the alleged grounds that the appeal was taken solely to harrass and delay the plaintiffs.

If the appeal is clearly frivolous and was taken from sinister and improper motives, the request should be granted, for this

power was given to the court to be used in proper cases to dis-
courage appeals of the character just mentioned. But we are
not prepared to say that such is the character of this appeal.
It presented for the determination of this court a question of
great importance both to insurers and insured, and it was very
desirable that such question be definitely settled so that parties
to similar contracts, in this state at least, might know their
rights and obligations in relation thereto. The determination
of that question has cost us too much thought and investigation
to permit us to say that the appeal ought not to have been
taken. In the absence of any satisfactory evidence to the con-
trary, we choose to believe that the appeal was taken to obtain
a decision of this court upon the important question involved in
the action, and not for the mere purposes of harrassing the
plaintiffs and delaying them in the collection of their just claim
against the defendant.

*By the Court.*—Judgment affirmed.