CLEAVER and others vs. CLEAVER and others.

WILL. *(1, 2) Lapse of devise or legacy to a wife, who dies before her husband, leaving issue surviving him.*
COSTS: *(3) On appeal from an order of distribution in probate.*

1. In sec. 29, ch. 97, R. S. (which provides that "when a devise or legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given"), the word "relation" includes only relations by consanguinity.
2. The testator's wife having died before him, a bequest made to her by the will lapsed, although she left issue which survived him.
3. On appeal to this court by the guardian of such infant issue, from a judgment of the circuit court (on appeal from an order of distribution made by the probate court) denying their right to such bequest, the costs of the appeal on both sides are ordered to be paid from the estate.

APPEAL from the Circuit Court for *Milwaukee* County.

This case arises upon an order of distribution made by the county court of Milwaukee county, in the estate of William L. Cleaver. The testator was twice married, and had three children by his first wife, and three by his second; the latter being the appellants in this case, and the former the respondents.

By his will, made after his second marriage, the testator, after giving specific legacies to each of his children by his first wife, gave and bequeathed all the residue of his estate, real and personal, to his second wife.

The wife having died several months prior to her husband, leaving the appellants, her issue, surviving, the county court, in making distribution of the estate, decreed that the residue thereof did not pass under the will to her issue, but should be distributed equally among all the testator's children. This order was affirmed by the judgment of the circuit court, from which this appeal is taken.

Sec. 29, ch. 97, R. S. 1858, reads as follows: "When a devise or legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will, in the same manner as the devisee or legatee would have done if he had survived the testator, unless a different disposition shall be made or directed by the will."

*L. S. Dixon*, for appellants, argued that the construction placed upon the statute by the county court would entirely frustrate the intention of the testator; that the word "relation," as universally understood in common conversation and ordinary usage, and as defined by lexicographers and writers upon the meaning and use of English words, includes connection by affinity or consanguinity (Webster's Dic.; Crabb's English Syn.; 1 Black. Com., 434); that the statute should receive a liberal construction (*Paine v. Prentiss*, 5 Met., 396;

*Farrington v. Wilson*, 29 Wis., 383); that the construction given to the word "relations" when used in connection with bequests in a will, is an arbitrary one, founded upon necessity, and resorted to for the purpose of avoiding the uncertainty which would attend such bequests if construed in a literal and extended sense (*M'Neilledge v. Galbraith*, 8 Serg. & R., 43, 45; *Same v. Barclay*, 11 id., 103, 105; Redf. on Wills, Part II, 409; *Huling v. Fenner*, 9 R. I., 410; *Varrell v. Wendell*, 20 N. H., 431; *Raynor v. Mowbray*, 3 Bro. C. C., 234); that the reason of the rule or restriction ceases where, as in this case, the devisee or legatee is specifically named, and a construction according to ordinary usage can give rise to no difficulty or uncertainty whatsoever; that the decisions under a similar statute of Massachusetts follow those of the English courts, guided by the rule as to who would be distributees, under the laws of that country, in case of intestacy, and should govern only so far as their reasoning convinces; and that even if that rule is to be followed, and the term restricted to those who would take as distributees in case of intestacy, it would still include the wife, as she is entitled, under our statute, to an equal share with the children of an intestate. R. S., ch. 99, sec. 1, subd. 6; ch. 92, sec. 1., subd. 2; ch. 61, Laws of 1868; ch. 121, Laws of 1870; 2 Tay. Stats., 1170, § 1, subd. 2; *Tyler v. Tyler*, 19 Ill., 151.

*James G. Jenkins*, for respondents:

1. The legacy can be sustained only upon the theory that the wife is a relation of the husband within the intent of the statute. The word "relatives," in the construction of wills, is applied ordinarly to persons in the line of consanguity, and not to connections by marriage; and in Massachusetts, from whose statute ours is copied, it has been expressly held that a wife is not a relation within the meaning of the statute. *Elmsley v. Young*, 2 Myl. & K., 82; *Cooper v. Denison*, 13 Sim., 290; *Davies v. Baily*, 1 Ves. Sr., 84; *Maitland v. Adair*, 3 Ves. Jr., 231; *Harvey v. Harvey*, 5 Beav., 134;

*Worsely v. Johnson,* 3 Atkyns, 758; *Storer v. Wheatly's Ex'rs,* 1 Pa. St., 506; *Esty v. Clark,* 101 Mass., 36; *Kimball v. Story,* 108 id., 382; 2 Jarman on Wills, 45; 2 Williams on Ex'rs, 1004; Roper on Legacies (2d Am. ed.), 117; *Varrell v. Wendell,* 20 N. H., 432; *Dickens v. R. R. Co.,* 23 N. Y., 158; *Drake v. Gilmore,* 52 id., 389. 2. In the construction of this statute, the doctrine of *noscitur a sociis* may properly be applied, and this would restrict the term "other relations" to those standing in the order of child, as grandchild, etc., in the direct descending line, and proceeding from the body of the testator. Broom's Leg. Max., 451; *Morse v. Ins. Co.,* 30 Wis., 534; Potter's Dwarris, 184, 236, 292; *Chegaray v. Jenkins,* 3 Sandf., 413; *Chegaray v. The Mayor, etc.,* 13 N. Y., 229.

RYAN, C. J. The testator's wife having died before him, there is no doubt that his bequest to her lapsed (2 Redfield on Wills, 284), unless it comes within sec. 29, ch. 97, R. S. And the sole question in this case is, whether a wife is a relation of her husband within the meaning of the provision.

Relation, in this use, is a very indefinite word, which has often perplexed courts. In a broad sense, there are relations by affinity as well as by consanguinity;" Jacobs' Dic., "Consanguinity;" 1 Black., 434. And in this sense, we should find it difficult to concur in the position that a wife is not a relation of her husband. *Storer v. Wheatly's Ex'rs,* 1 Pa. St., 506. As great a jurist as GIBSON, C. J., suffered himself to say in that case: ".A wife is not related to her husband in any respect. Of his connection with her family, she is the link or *commune vinculum;* but so far is she from being connected with him as a relation, that her civil existence is melted into his, and they together form one person. A wife, therefore, is no more a relation or connection of her husband, than the husband is a relation or connection of himself." That seems carrying a theory of the common law *ad absurdum;* a paradox which would make the

homicide of the wife by the husband appear to partake of the nature of suicide rather than of murder, and the adultery of the wife rather the husband's own offense than hers against him.   But though the common law adopted the maxim *vir et uxor sunt unica persona, quia caro una et sanguis unus*, yet that was very much *cum sit vir caput mulieris* (Co. Lit., 112 a.), and was largely in regard of rights of property and action.   For many purposes, the common law truly recognized two persons in marriage, distinct and bearing to each other the nearest of all human relations.   Bacon's, Peterdorff's, Dane's Abr., *"Baron & Femme."*  The startling position, shocking all human understanding, that the wife is not a relation of the husband, seems to have arisen from the language of Lord HARDWICKE in *Worsely v. Johnson*, 3 Atkyns, 758, which the chancellor rests on his previous decision in *Davies v. Baily*, 1 Vesey Sr., 84; forgetting that he had said in the latter case, decided on another point, " It cannot be said that there is no relation between the husband and wife; but the question is, whether there be such a relation as is here meant." And that is the precise question in the construction of the statute before us.

The section in question seems to have been taken in 1849 from Massachusetts.   There does not appear to have been then any construction of it in that state.   But the subsequent decisions of *Esty v. Clark*, 101 Mass., 36, and *Kimball v. Story*, 108 id., 382, though not binding upon us, ought to have great weight.   And it is satisfactory that our own conclusion is the same.

The word, relation, was perhaps unfortunately used in the section, because it is in itself indefinite.   But there had fortunately been a uniform line of decisions, extending through more than a century, before the section was adopted here, which confined the word used in bequests, to relations by blood, and made it virtually equivalent to kindred.   *Brown v. Brown*, ruled by Lord MACCLESFIELD, and cited in *Thomas*

*v. Hill, infra*, and other cases, was perhaps the first case on the point, but we cannot find it reported. *Anonymous*, 1 P. Wms., 327; *Thomas v. Hill*, Cases Temp. Talbot, 251; *Harding v. Glyn*, 1 Atkyns, 469; *Att'y Gen. v. Burkland*, apparently not reported, but cited in *Goodinge v. Goodinge*, 1 Vesey Sr., 231, and in a note to *Edge v. Salisbury*, Ambler, 70; *Davies v. Baily*, 1 Vesey Sr., 84; *Worsely v. Johnson*, 3 Atkyns, 758; *Whithorne v. Harris*, 2 Vesey Sr., 527; *Isaac v. Defriez*, Ambler, 595; *Green v. Howard*, 1 Brown's C. C., 31; *Hands v. Hands*, apparently not reported, cited in *Philips v. Garth*, 3 Brown's C. C., 69, and in other cases; *Spring v. Biles*, 1 Term, 435; *Stamp v. Cooke*, 1 Cox, 234; *Raynor v. Mowbray*, 3 Brown's C. C., 234; *Maitland v. Adair*, 3 Vesey, 231; *Devisme v. Mellish*, 5 id., 529; *Jones v. Colbeck*, 8 id., 38; *Mahon v. Savage*, 1 Sch. & Lef., 111; *Cruwys v. Colman*, 9 Vesey, 319; *Doe v. Over*, 1 Taunton, 263; *Pope v. Whitcombe*, 3 Merivale, 689; *Smith v. Campbell*, Cooper, 275; 19 Vesey, 400; *Wright v. Atkins*, Turner & R., 143; *McNeilledge v. Barclay*, 11 Serg. & R., 103; *Harvey v. Harvey*, 5 Beavan, 134; *Storer v. Wheatley's Ex.*, 1 Pa. St., 506; *Varrell v. Wendell*, 20 N. H., 431. See also Comyn's Dig., App., "Devise of personal property," 30, 31, 32; 2 Jarman, 45; 1 Roper's Leg., 117; 2 Williams' Ex., 957; 2 Redfield on Wills, 409. There are probably other cases to the same effect; but we have been unable to find any qualifying the effect of those cited, which were all prior to the passage of our statute. There are subsequent cases, English and American, besides those in Massachusetts, *supra*, to the same purpose, which we do not think it necessary to quote. Those cited all proceed upon the necessity of limiting the indefinite sense of the word, relations; limit it by the statute of distributions to kindred ; and determine not only the degrees of relation, but the kind also, that is by consanguinity. Such an unbroken series of decisions for nearly a century and a half appears to us conclusive of the construction of the

word, applied to wills, as used in the statute. R. S., ch. 5, sec. 1, subd. 1. They warrant us to apply the language of Lord THURLOW in *Raynor v. Mowbray:* "If it was a recent matter, there might be a doubt; but .... when once a rule has been laid down, it is best to abide by it. We cannot always be speculating what would have been the best decision in the first instance."

This view would control our construction; but there is another which appears also to be conclusive. The words of the statute are, " child or other relation." *Noscitur a sociis.* Child or other relation must signify child, or other relation of like character as a child; that is, other relation of the testator's blood. " When particular words are followed by general ones, the latter are to be held as applying to persons and things of the same kind as those which precede." Potter's Dwarris, 236, 292; Broom's Leg. Max., 450; *Morse v. Ins. Co.,* 30 Wis., 534; *Att'y Gen. v. R. R. Companies,* 35 id., 425; *Chegaray v. Jenkins,* 3 Sandford, 409. In the latter case, the statute construed had the words "Incorporated Academy or other seminary of learning." And the court says: " The maxim *noscitur a sociis* appears to be applicable here, and to limit the exemption from taxation to such seminaries alone as are incorporated." We cannot doubt the effect of the word, other, in this statute, or the intention of the legislature to use the phrase, other relation, in the sense of kindred.

The law has always favored blood in the descent of estates. The particular provisions of our statutes in favor of the wife are personal to her, and tend rather to exclude than to include her in the term relations, as used in the section. *Green v. Howard, supra.* In saving bequests from lapsing by the death of the devisee or legatee before the testator, the legislative intention appears to have been to save them only to the kindred of the testator, to the issue of the devisee or legatee only when the issue is of the testator's blood as well as the devisee or legatee. Therefore the statute is so framed as to

exclude bequests to a stranger or the wife, because the issue of the one could not, and the issue of the other might not, be of the testator's blood. When the wife's issue is the husband's also, it seems to have been presumed that the will itself would provide for them without necessity of statutory protection. But when the issue of the wife is not the issue of the husband, we can perceive no reason, in or out of the statute, for saving a personal bequest to her from lapsing, which would not apply, though with perhaps less force, to a personal bequest to a stranger.

In the present peculiar case, the rule seems to work a hardship; but we must apply the general principle. In such circumstances as these, the natural feeling of the elder children should afford that protection to the younger, which courts cannot give without violation of judicial rule. And we can say of this case, as the court of Pennsylvania said of another:. " It is an unfortunate case, but the law is clear. The legacy lapsed by the death of the legatee in the life of the testator." The statute " does not reach the present case, and we are sorry for for it." *Dickinson v. Purvis*, 8 Serg. & R., 71.

*By the Court.* — The judgment of the court below is affirmed.

The following *addendum* by the chief justice, shows the disposition made of the question of costs.

RYAN, C. J. In passing on the main question involved in this appeal, we quite overlooked the minor question of costs. Our attention has since been called to the omission by the clerk. We cannot doubt that the appeal was taken in good faith, or indeed that the guardian of the infants was quite right in taking it. Under all the circumstances of the case, we think that the costs of the appeal, on both sides, should come from the estate. *Jackman Will Case*, 26 Wis., 364. Let the judgment be so entered.