IN RE ESTATE OF HAESE, Deceased: THOMPSON, and others, Appellants, v. ALLAERT, Personal Representative, and others, Respondents.

*No. 75-607. Argued October 5, 1977.—Decided November 1, 1977.*
(Also reported in 259 N. W. 2d 54.)

For the appellants there was a brief by *David L. Walther, John Sundquist,* and *Walther & Halling,* with oral argument by *David L. Walther,* all of Milwaukee.

For the respondents there was a brief by *Harlow J. Hellstrom Ltd.* and *Thomas J. Marola,* of counsel, with oral argument by *Harlow J. Hellstrom,* all of Milwaukee.

BEILFUSS, C. J. The testatrix, Louise G. Haese, executed the will in question on August 4, 1965. She died on June 4, 1974. The will was admitted to probate on July 19, 1974.

This review calls for the construction of the phrase "relative of the testator" as it appears in the present (1973) anti-lapse statute, sec. 853.27.[1] Prior to 1973

[1] "853.27 *Rights of issue of beneficiary dying before testator (lapse).* (1) Unless a contrary intent is indicated by the will, if provision in the will is made for any relative of the testator and the relative dies before the testator and leaves issue who survive the testator, then the issue as represent the deceased relative are substituted for him under the will and take the same interest as he would have taken had he survived the testator."

the questioned phrase was "child or other relation of the testator."[2]

The will of the testatrix, Louise G. Haese, provided;

"SEVENTH: I give and bequeath the sum of FIVE THOUSAND ($5000.00) Dollars to LESLIE HAESE, a nephew of my deceased husband, ADOLPH H. HAESE."

Leslie Haese died on August 29, 1969. The testatrix died on June 4, 1974. Leslie Haese was not a blood relative of the testatrix—he was a nephew of the testatrix' husband and therefore a relative through marriage. The appellants, Mark Haese, Leslie Thompson and Ned Haese, are children of Leslie Haese.

The respondent, Paul Allaert, was appointed the personal representative. In that capacity he filed petitions in the probate court to construe the will. He sought an interpretation of the paragraph making the bequest to Leslie Haese and in the event it was determined this legacy lapsed then a construction of the residuary clause.

The trial court concluded that Leslie Haese was not a relative within the meaning of the present anti-lapse statute. His opinion was based primarily upon our early case of *Cleaver v. Cleaver*, 39 Wis. 96 (1875), which held the anti-lapse statute applied only to blood relatives.

At the time of the *Cleaver* decision, and until recently, the anti-lapse statute referred to "any child or

---

[2] "238.13 *Rights of issue of deceased legatee.* When a devise or legacy shall be made to any child or other relation of the testator and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator unless a different disposition shall be made or directed by the will."

other relation" as contrasted to the present language of "any relative."

In *Cleaver* the court relied, in part, on the doctrine of *noscitur a sociis*—it is known from its associates—to limit "other relation" to blood relatives because of its association in this statute with "child." Our present statute omits the word "child" and sets forth only "any relative"; therefore the doctrine of *noscitur a sociis* no longer applies.

*Cleaver* was nonetheless determined to be persuasive because its construction of the word "relation" apart from *noscitur a sociis*. The opinion states:

> "The word, relation, was perhaps unfortunately used in the section, because it is in itself indefinite. But there had fortunately been a uniform line of decisions, extending through more than a century, before the section was adopted here, which confined the word used in bequests, to relations by blood, and made it virtually equivalent to kindred. . . . Those cites all proceed upon the necessity of limiting the indefinite sense of the word, relations; limit it by the statute of distributions to kindred; and determine not only the degrees of relation, but the kind also, that is by consanguinity. Such an unbroken series of decisions for nearly a century and a half appears to us conclusive of the construction of the word, applied to wills, as used in the statute. R.S., ch. 5, sec. 1, subd. 1. They warrant us to apply the language of Lord THURLOW in *Raynor v. Mowbray*: 'If it was a recent matter, there might be a doubt; but . . . when once a rule has been laid down, it is best to abide by it. We cannot always be speculating what would have been the best decision in the first instance.'
>
> "This view would control our construction; . . ." *Cleaver*, 39 Wis. at 100–102.

Appellants assert that "relative" in sec. 853.27 (1), Stats., must be given its common and ordinary meaning.[3]

---

[3] *Town of Lafayette v. Chippewa Falls*, 70 Wis.2d 610, 619, 235 N.W.2d 435 (1975).

When no explicit definition is provided, the general rule of sec. 990.01 (1) provides:

"*General Rule.* All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to that meaning."

The ordinary and common meaning of a word may be established by its definition in a recognized dictionary.[4] The ordinary meaning of the word "relative" is a person connected with another by blood or affinity. Webster's Third International Dictionary, p 1916. However Webster's qualifies this by stating that this is especially true when persons are connected by blood. Black's Law Dictionary (4th ed. 1957, p. 1453) defines "relative" as: "A kinsman; a person connected with another by blood or affinity." On the other hand, Black's defines "relation" as: "A relative or kinsman; a person connected by consanguinity," p. 1452. *See also Cleaver v. Cleaver,* 39 Wis. at 99, where the court stated: "Relation, in this use, is a very indefinite word, which has often perplexed courts."

Thus, while there is general agreement that a relative is one connected by blood or affinity, the dictionaries indicate that in some cases consanguinity may be the key. We conclude the term is ambiguous.

The meaning of ambiguous wording in a statute may be sought by reference to materials outside the language of the statute which are indicative of legislative intent.[5]

[4] *State v. Killory,* 73 Wis.2d 400, 413, 243 N.W.2d 475 (1976); *Edelman v. State,* 62 Wis.2d 613, 620, 215 N.W.2d 386 (1974).

[5] *Pittman v. Lieffring,* 59 Wis.2d 52, 62, 207 N.W.2d 610 (1973); *Department of Natural Resources v. Clintonville,* 53 Wis.2d 1, 8, 191 N.W.2d 866 (1971).

An ambiguous statute, phrase, or word is ,one which is capable of being interpreted by reasonably well informed persons in either of two or more senses. This means that there must be more than simple disagreement. The test is whether well informed persons could have become confused.[6]

The word "relative" may be construed as being relative by blood on the basis that it has achieved a peculiar meaning in the law. As such it would fall within an exception to the common meaning rule of sec. 990.01(1), Stats. Practically all of the courts of the nation which have considered the problem, as well as Wisconsin, have consistently held "relative," "relation," or similar variants used in an anti-lapse statute, to mean exclusively relatives by blood.[7]

Although appellants contend that reliance upon *Cleaver* and other cases to prove that "relative" means blood relative is misplaced, these cases and authorities, at least at this point, stand for the position that the term is subject to a restrictive and peculiar meaning and is ambiguous.

The respondents contend that sec. 853.27(1), Stats., is a restatement of the prior law and that decisions construing sec. 238.13 are controlling.

This court has recognized that the mere repeal and re-enactment of . "substantially the same section does not overrule the prior court interpretations." *Bruner v.*

---

[6] *Czaicki v. Czaicki,* 73 Wis.2d 9, 14, 242 N.W.2d 214 (1976); *Recht-Goldin-Siegal Construction, Inc. v. Dept. of Revenue,* 64 Wis.2d 303, 306, 219 N.W.2d 379 (1974).

[7] *Cleaver v. Cleaver,* 39 Wis. 96 (1875); *Estate of Dodge,* 1 Wis.2d 399, 84 N.W.2d 66 (1957); *Estate of Mangel,* 51 Wis.2d 55, 186 N.W.2d 276 (1971); Annot. 63 A.L.R.2d 1195 (1959); 6 Page on Wills, sec. 50.13, p. 87 (1962).

*Dept. of Revenue*, 57 Wis.2d 70, 76, 203 N.W.2d 663 (1973). However:

"Generally, the studied omission of a word or words in the re-enactment or revision of a statute indicates an intent to alter its meaning." *Pittman v. Lieffring*, 59 Wis.2d 52, 64, 207 N.W.2d 610 (1973).

The omission of the word "child" in the new statute, which was important in *Cleaver* as the basis for the *noscitur a sociis* analysis, thus appears to indicate that the cases interpreting the prior anti-lapse statute cannot be blindly followed as authority on the new section. Otherwise, however, the provisions of secs. 238.13 and 853.27 (1), Stats., are practically identical.

On the other hand, the *Cleaver* court did not rely exclusively on *noscitur a sociis* to reach its decision as set forth above.

But appellants argue, one hundred years later, that the *Cleaver* analysis was in error. According to appellants, the court erroneously applied the principles of will construction when it should have applied the principles of statutory construction. This claim is buttressed by the language in *Cleaver*, quoted above, that the decisions cited in support of the restrictive meaning had interpreted the word as "used in bequests" and that these decisions are "conclusive of the construction of the word, applied to wills, as used in the statute."

The primary object of interpreting a will is to ascertain the testator's intent,[8] while the purpose of statutory construction is to ascertain the legislative intent.[9]

It is appellants' position that the rule of will construction which reads "relative" as blood relative was misused

[8] *Estate of Farber*, 57 Wis.2d 363, 369, 204 N.W.2d 478 (1973).
[9] *State ex rel. Gutbrod v. Wolke*, 49 Wis.2d 736, 742, 183 N.W.2d 161 (1971).

by the *Cleaver* court and that this court should not compound the error by following suit.

It was not improper for the *Cleaver* court to make reference to the construction of wills in construing a statute of this type. When seeking the legislative intent, the statute may be analyzed by reference to its scope, history, purpose or object, and subject matter.[10] The subject of the statute was, and is, intimately connected with will construction. The rules are, or can be presumed to be, well known, and it would be reasonable for a court to conclude that the legislature had them in mind when it created the anti-lapse statute.

Additionally, a court interpretation of a statute becomes a part of that statute; it is the duty of the legislature to act if it disagrees.[11] The fact that the legislature waited for almost one hundred years to take any action which could be construed as overruling the *Cleaver* interpretation militates against appellants' contention that the restrictive definition was improper and bore no relation to legislative intent.

*Cleaver* has become a case of national importance on the subject of anti-lapse and is cited in many cases for the proposition that a "relative" or "relation" within the meaning of such a statute is a blood relative. This restrictive definition appears to have unanimous acceptance.[12] However, most state statutes have retained

[10] *Pittman v. Lieffring*, 59 Wis.2d 52, 62, 207 N.W.2d 610 (1973); *Department of Natural Resources v. Clintonville*, 53 Wis.2d 1, 8, 191 N.W.2d 866 (1971).

[11] *Salerno v. John Oster Mfg. Co.*, 37 Wis.2d 433, 441, 155 N.W.2d 66 (1967); *Estate of Kohls*, 57 Wis.2d 141, 146, 203 N.W.2d 666 (1973).

[12] *See* Annot. 63 A.L.R.2d 1195 (1959), and 6 Page on Wills, sec. 50.13 (1962).

language similar to the old Wisconsin anti-lapse statute in that they refer to "child or other relation."

The two states which have statutes that refer only to "relative" both hold that "relative" refers to blood relatives.

The Maine court cited Cleaver as authority for defining "relatives "under its statute as blood relatives. *Keniston v. Adams,* 80 Me. 290, 14 A. 203 (1888). That court apparently concluded that the doctrine of *noscitur a sociis* was not essential to the restrictive definition.

Several Ohio cases present a situation analogous to the instant case because there the anti-lapse statute underwent repeal and recreation as in Wisconsin. In *Schaefer v. Bernhardt,* 76 Ohio St. 443, 81 N.E. 640 (1907), the anti-lapse statute used the phrase "any child or other relative." No cases were cited. While holding that the statute only applied to blood relatives, the Ohio Supreme Court did suggest by way of dicta that had the word "child" been omitted, a stronger case could have been made for an all inclusive definition of "relative."

In 1953, the Ohio statute was revised, the only significant change being the omission of the word "child." In *Schuck v. Schuck,* 156 N.E.2d 351 (1958), the Probate Court of Hamilton County, Ohio, reviewed *Schaefer v. Bernhardt, supra,* but did not pursue the dictim of *Schaefer* because the Ohio legislature which created the new anti-lapse statute specifically stated that it was a restatement of the prior statute and was not intended to change the law.

Legislative intent may be sought by reference to a statute's scope, history, context, subject matter, and purpose or object.[13]

[13] *See Pittman v. Lieffring,* 59 Wis.2d 52, 62, 207 N.W.2d 610 (1973), and *Department of Natural Resources v. Clintonville,* 53 Wis.2d 1, 8, 191 N.W.2d 866 (1971).

Although, unlike the Ohio legislature, the Wisconsin legislature has not provided an authoritative statement of purpose to aid in interpreting sec. 853.27(1), Stats., there is a comment prepared by the committee of the State Bar who drafted ch. 853, which follows sec. 853.-27(1) in West's Wisconsin Statutes Annotated and states:

"This section applies only to gifts to relatives as did the former statute. It is not limited to heirs under s. 852.01, but would include more remote relatives. It would exclude relatives by marriage; see Cleaver v. Cleaver, 39 Wis. 96 (1875); Estate of Dodge, 1 Wis.2d 399, 84 N.W.2d 66 (1956)."

Appellants assert, and the trial court agreed, that this comment cannot be used to determine legislative intent. The trial court cited *Moorman Mfg. Co. v. Industrial Comm.*, 241 Wis.2d 200, 208, 5 N.W.2d 743 (1942), in support of this position:

"The meaning of a legislative act must be determined from what it says—not by what the framer of the act intended to say or what he thought he was saying."

However, in this and the other cases cited by the trial court, we believe the language was unambiguous and susceptible to interpretation by common and ordinary meaning. This is not the case here.

The respondents point out that these comments are cited by the Legislative Reference Bureau in its analysis of the Probate Code revision in the Report of the Wisconsin Legislative Council, Vol. 3, pp. 1–2 (1969). The analysis is brief. In fact it is only a reference to the State Bar explanation: "This proposal is explained in detail in the notes provided by the State Bar of Wisconsin."

This court has considered the Legislative Reference Bureau's analyses in several past decisions to help construe various statutes. In *Tanck v. Clerk, Middleton*

*Joint School Dist.,* 60 Wis.2d 294, 305, 210 N.W.2d 708 (1973), an analysis was among several indices of legislative intent considered by the court. Of more significance is the recent case of *Czaicki v. Czaicki,* 73 Wis.2d 9, 16, 242 N.W.2d 214 (1976). There the court considered evidence of a draft bill recommended by the Family Law Section of the State Bar of Wisconsin, the Legislative Reference Bureau's action on that recommendation, and a review of that action by the Family Law Section. This indicates that the comments of the State Bar drafting committee could be considered even if they had not been specifically incorporated into the analysis of the Legislative Reference Bureau. Generally, it can be said, reports or comments of nonlegislative committees are considered a valid aid in interpreting a statute which originated from such committee.[14]

Because of the additional fact that the comments are incorporated into the Legislative Reference Bureau's analysis, which is required by law, sec. 13.92(1)(b)2., Stats., we conclude that the court may consider this comment in construing sec. 853.27(1).

As a further aid in construction, we note the older cases, including *Cleaver v. Cleaver,* 39 Wis. 96 (1875), make reference to the law of nature. For example, *Schaefer v. Bernhardt, supra,* states:

"Throughout our statutes of descent and distribution obvious consideration is given to the law of nature by which our highest regard and chief concern are for those who are bound to us by ties of blood." 81 N.E. at 641.

Although the courts recognized that this might be unjust, the policy nevertheless was retained.

[14] Sutherland, *Statutory Construction* (4th ed.), sec. 48.11.

The fact is that the rule restricting anti-lapse statutes to blood has been retained by every state.[15] Furthermore, the legislature of the only state which has repealed and re-enacted its statute as has Wisconsin, determined that the restriction to blood relatives should be retained. *Schuck v. Schuck,* 156 N.E.2d 351 (1958).

Another factor which can be considered, if we are to construe the will as well as the statute, is that this testatrix' intentions are not defeated by interpreting the new statute as restricted to blood relatives. When her will was written the statute clearly applied only to blood relatives, and a testator or testatrix is presumed to be aware of the law at the time a will is executed.[16] Both the old and the new statutes apply only where there is no contrary intent expressed in the will. If Louise G. Haese had wished the bequest to Leslie Haese to go to his issue in the event he predeceased her, the will could have so provided.

We conclude the phrase "any relative" as it appears in sec. 853.27, Stats., is restricted to those of consanguinity and that the will expresses no other intention.

Respondents request this court to reverse that part of the order which held that the lapsed residuary gift to Leslie Haese be distributed as intestate property. Respondents may not raise this issue, which attacks the order appealed from, without filing notice of review as required by sec. 817.12(1), Stats.,[17] In any event, it

---

[15] Annot. 63 A.L.R.2d 1195 (1959); 6 Page on Wills, sec. 50.13 (1962).

[16] *Will of Mitchell,* 50 Wis.2d 499, 504, 184 N.W.2d 853 (1971).

[17] *Stevens Construction Corp. v. Draper Hall, Inc.,* 73 Wis.2d 104, 117, 242 N.W.2d 893 (1976); *Hutterli v. State Conservation Comm.,* 34 Wis.2d 252, 255, 148 N.W.2d 849 (1967); *McPhillips v. Blomgren,* 30 Wis.2d 134, 145, 140 N.W.2d 267 (1966).

is well established that in case of lapse, the lapsed gift goes into intestacy unless such is clearly contrary to the testator's intent.[18]

*By the Court.*—Order affirmed.

[18] *Estate of Connolly,* 65 Wis.2d 440, 222 N.W.2d 885 (1974).