Harold A. BREIER, Plaintiff-Respondent,

v.

Michael BALEN, Franklyn M. Gimbel, William I. Gore, Gilbert Jewell and Arlene Kennedy, Defendants-Appellants.†

Court of Appeals

*No. 82–1693. Submitted on briefs June 1, 1983.—Decided July 11, 1983.*
(Also reported in 338 N.W.2d 304.)

[15] *See id.* at 315, 284 N.W.2d at 112; *see also* sec. 809.83(2), Stats.

† Petition to review denied.

For the defendants-appellants the cause was submitted on the briefs of *James B. Brennan,* city attorney, with *Patrick B. McDonnell* and *Thomas C. Goeldner,* assistant city attorneys, of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Michael, Best & Friedrich,* with *David J. Cannon, Esq.,* of counsel, of Milwaukee.

Before Voss, P.J., Decker and Moser, JJ.

DECKER, J.   We determine that the Milwaukee Chief of Police Harold A. Breier (Chief) has standing to challenge the validity of a rule prescribed by the Milwaukee Board of Fire and Police Commission which required the Chief to relieve from duty or assign to station house duty a Milwaukee police officer, (1) directly involved in a shooting incident resulting in the death or life threaten-

ing injury of another, or (2) who uses force upon a person which results in death or "great bodily harm" to another. We also determine that the named defendants who constitute the Board of Fire and Police Commissioners (Board) exceeded its statutory authority when it prescribed a replacement rule governing a subject not addressed in the rule prescribed by the Chief. We affirm the circuit court.

In this appeal we do not deal with the wisdom or merits of the rule as adopted by the Chief or amended by the Board. The issue presented in this appeal is whether the Board had authority to amend a rule prescribed by the Chief when the subject of the Board's amendment was not addressed by the Chief's rule.

A preliminary issue is whether the Chief has standing to challenge the Board's rule.

Section 62.50(23), Stats.[1] specifies the duties and authority of the Chief as the head of the police department

---

[1] Sec. 62.50(23), Stats., provides:

DUTIES OF CHIEF. The chief engineer of the fire department and the chief of police of a 1st class city, shall be the head of their respective departments. The chief of police shall cause the public peace to be preserved and see that all laws and ordinances of the city are enforced. The chief shall be responsible for the efficiency and general good conduct of the department under his or her control. The chief of each department shall prescribe rules for the government of the members of the department. Any rule prescribed by a chief shall be subject to review and suspension by the board. The board may prescribe a rule to replace any rule the board suspends. A chief may not suspend any rule prescribed by the board. The board may prescribe a procedure for the prescription of rules by a chief or by the board and for the review and suspension of rules by the board. Such procedure may include, without limitation because of enumeration, a provision that a rule not take effect until the rule is reviewed and approved by the board. The rules of each department shall be available to the public at a cost not to exceed the actual copying costs. Each of the chiefs shall have the custody and control of all public property pertaining to their respective departments. They shall have the

and requires that the Chief shall prescribe rules for the government of the department.

Milwaukee Police Department rule 5, sec. 11, as prescribed by the Chief, read: "A leave of absence, with pay, for one day may be granted by a commanding officer to any member of his command in case of serious illness in his immediate family or other extraordinary emergency."

The Board, purporting to exercise its authority pursuant to sec. 62.50 (23), Stats., and by letters dated September 18, 1981, and September 23, 1981, "proscribed [sic] the following Rule to replace the Rule suspended:"

A police officer directly involved in a shooting incident resulting in the death or life-threatening injury of another, or a police officer who uses force upon a person, which results in death or great bodily harm to another, for the good of the service and the welfare of the officer, shall either be relieved from all police duty by the Chief of Police, no later than at the start of the next regularly scheduled duty day, or be temporarily assigned to station house police duty, with all pay and benefits continuing. "Great bodily harm" means bodily injury which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury.

The Chief of Police shall immediately report such relief from duty or reassignment to the Fire and Police Commission by submission of a written report to the Executive Secretary of the Fire and Police Commission, and provide a copy of such report to the Milwaukee County District Attorney. This report shall detail the identity of the officer or officers so relieved or reassigned, and identify the incident causing such relief from duty or reassignment. Any officer relieved or reassigned under this section remains a member of the department and subject to all rules and regulations.

---

custody and control of all books, records, machines, tools, implements and any apparatus necessary for use in each of the departments.

Upon completion of a full investigation of the incident, with the resultant determination by the Chief of Police that no additional administrative investigation is required, and a further determination having been made by the Chief of Police that there has been no violation of police department rule or state law, the Chief of Police shall prepare a written report to the Executive Secretary of the Fire and Police Commission with at least three working days' notice that the Chief intends to reinstate any officer relieved or reassigned to their full police duties. Being relieved of duty, under this rule, is not disciplinary in nature, and does not intimate any impropriety of conduct by such officer.

A leave of absence, with pay, for one day may be granted by a commanding officer to any member of his command in case of serious illness in his immediate family or other extraordinary emergency.

We note that sec. 62.50 (23), Stats., requires the Chief to prescribe police department rules. The same statutory subsection grants to the Board the following authority: "Any rule prescribed by a chief shall be subject to review and suspension by the board. *The board may prescribe a rule to replace any rule the board suspends.* A chief may not suspend any rule prescribed by the board." (Emphasis supplied). The focus of this appeal is upon the emphasized sentence.

In *Loy v. Bunderson,* 107 Wis. 2d 400, 410, 320 N.W.2d 175, 182 (1982) our supreme court reiterated the standards to be applied by the trial court in the exercise of its discretion to grant a declaratory judgment:

A reasonable summary of Borchard's position would require the following:

"There must exist a justiciable controversy—that is to say:

"(1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.

"(2) The controversy must be between persons whose interests are adverse.

"(3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.

"(4) The issue involved in the controversy must be ripe for judicial determination. Borchard, Declaratory Judgments, pp. 26–57."

Any other interpretation of Borchard fails to conform to the clear meaning of the text and has led to discursive and irrelevant exegeses, not only in the briefs of counsel over the years, but in the opinions of this court. The ultimate fact to be found by a circuit court in the exercise of its discretion is "justiciability." If the controversy is "justiciable," by definition it has all the characteristics set forth in the paragraph above. Hence, it is pointless and incorrect to consider justiciability merely as a component of what may be the subject of a declaratory judgment.

The standard of our review of the trial court has been prescribed:

While, as in all discretionary acts of a court, reasonable persons may sometimes differ in the outcome, all that this court need find to sustain a discretionary act is that the trial court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971).

*Bunderson,* supra at 414–15, 320 N.W.2d at 184.

We view the appellants' claims that the Chief has no standing to bring this action as contrary to a rational and reasoned analysis.

The members of the Milwaukee police force hold their appointments at the pleasure of the Chief (sec. 62.50(9), Stats.) subject to suspension, discharge and trial provided by sec. 62.50, Stats. The Chief may suspend the rest day of officers in case of a sudden and serious emergency. The Chief is the head of the police department

and is responsible for the efficiency and general good conduct of the police department.

The proposed rule, here under attack, intrudes upon the authority of the Chief in the following manner:

(1) It compels the Chief to relieve an affected officer from duty or to assign him to station house duty (if he is not already so assigned).

(2) The intrusive relief from duty or reassignment must continue for at least three days before the officer may be "reinstated . . . to . . . full police duties."

(3) The relief from duty or reassignment is required no later than the next regularly scheduled duty day after the event.

These intrusions, by constricting the Chief's assignment of the members of the police force, infringe upon the statutory responsibility of the Chief for the efficiency of the police department. The rule intrudes upon the initial authority of the Chief to set police department policy because it addresses a subject not addressed in the rule initially prescribed by the Chief.[2]

The trial court discussed the intrusions upon the Chief's rule and policy and properly exercised its discretion. Our review of the exercise of that discretion clearly confirms the trial court's conclusion that the Chief has standing to bring this declaratory judgment action.

"[T]he law of standing in Wisconsin should not be construed narrowly or restrictively." *Fox v. DHSS*, 112 Wis. 2d 514, 524, 334 N.W.2d 532, 537 (1983); *Bence v. City of Milwaukee*, 107 Wis. 2d 469, 478, 320 N.W.2d 199, 203 (1982). In this case the trial court's conclusion that the Chief has standing to bring this action is equated with a legally protectible interest to seek a declaration of

---

[2] Our analysis of this intrusion is addressed more completely at a later point in this opinion.

rights with respect to the validity of the substituted rule prescribed by the Board.

We agree that the Chief has a legally protectible interest, or stated another way, "a personal stake," in the rule proposed by the Board. By its substituted rule, the Board has claimed its right to regulate the police department policy with respect to mandatory removal from duty or reassigned duty of a police officer involved in shooting incidents resulting in death or life threatening injury and police officers using force causing death or great bodily harm. The Chief contests that authority as invading his statutory responsibility, as head of the police department, to initiate departmental policy by prescribing rules for the government of the members of the police force. These competing claims constitute a controversy between persons whose interests are adverse. Although the Chief and the Board both purport to act in the best interests of the police department pursuant to their respective authority, the controversy between the Board and Chief over the disputed authority to regulate the subject of the rule is therefore between parties whose interests are adverse.

The complaint alleges, the answer admits and the affidavit in support of the Board's motion for summary judgment confirms that the rule in question was promulgated as a replacement rule on June 18, 1981. These factual circumstances determine that the "ripeness" element is satisfied. *See State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 675, 239 N.W.2d 313, 325 (1976). The controversy is neither abstract nor is adjudication premature. *Lister v. Board of Regents,* 72 Wis. 2d 282, 309, 240 N.W. 610, 625 (1976).

All four elements of a justiciable controversy are present and therefore declaratory relief was appropriately considered by the trial court. We therefore, turn to the

question whether the Board exceeded its statutory authority when it promulgated a replacement rule.

Section 62.50(23), Stats., authorizes the Board to suspend a rule prescribed by the Chief and permits the Board to "replace" such a rule. The Board has no *express* initial authority to address a subject by rule until a rule has been prescribed by the Chief.

Our first statutory construction task is to determine the "common and approved usage" (sec. 990.01(1), Stats.) of the word "replace." "Replace" involves the concepts of substitution and equivalency,[3] concepts analogous to, respectively, form and content. Self-evidently, the Board was authorized by sec. 62.50(23), Stats., to substitute a new rule for the Chief's suspended one; one form may be substituted for another. Whether the statute authorizes the Board to supplant the rule with one whose content is not equivalent to the original, however, is the question before us.

Our statutory and common law authority to resort to a dictionary as an aid to statutory construction offers little assistance in determining the legislature's intended breadth of "a replacement rule."[4] Discernment of legislative intent is the aim and controlling factor of all statutory construction.[5]

In this case the phrase, "replace any rule," does not disclose whether the legislature intended to limit the subject addressed in the Board's substitute rule. The Board's rule addresses the subject of reassignment or relief from duty of police officers involved in circumstances of death or great bodily harm to others because of an officer's actions.

---

[3] Webster's Third New International Dictionary 1925 (1976).

[4] Sec. 990.01 (Stats.); *Milwaukee County v. DILHR*, 80 Wis. 2d 445, 450, 259 N.W.2d 118, 121 (1977); *In re Estate of Haese*, 80 Wis. 2d 285, 291, 259 N.W.2d 54, 56 (1977).

[5] *Milwaukee County v. DILHR*, *supra* note 4.

"Replace" is an ambiguous word because it "is capable of being interpreted by reasonably well informed persons in either of two or more senses. This means that there must be more than simple disagreement. The test is whether well informed persons could have become confused."[6]

"Replace" could be interpreted as requiring a rule which must address:

(1) the same subject; or

(2) a related subject; or

(3) a new subject if it supplants or displaces the subject of the Chief's suspended rule; or

(4) a different (more restrictive, more expansive or alternative) treatment of any of the above subjects.

What was the legislature's intent in the use of the word "replace"?

The authority of the Board with respect to rules issued by the Chief governing the members of the department is found in secs. 69.50(1m) and (23), Stats. Subsection (1m) is limited to a review of such rules and subsec. (23) authorizes suspension and substitution of a *replacement* rule.[7] We agree with the opinion of the attorney general, (No. 15, Feb. 1, 1982) that sec. 62.50 does not grant express rule-making authority on matters of policy not initially addressed in the rules prescribed by the Chief.

It is the general rule that an administrative agency has only those powers which are expressly conferred or which are fairly implied from the four corners of the statute under which it operates. Therefore, no agency may issue a rule that is not expressly or impliedly authorized by the legislature. *State (Department of Administration) v.*

---

[6] *Haese, supra* note 4, at 291, 259 N.W.2d at 56–57.

[7] Additional rule-making authority of the Board governing the selection and appointment of members of the police force is prescribed by sec. 62.50(3), Stats.

*DILHR*, 77 Wis. 2d 126, 136, 252 N.W.2d 353, 357 (1977). [Citations omitted.]

■

For the reasons we have detailed, we believe that it is reasonable to doubt that the phrase, "replace any rule," implies the grant of implied authority to the Board to prescribe rules which address a new subject not addressed by the Chief's rule, and we therefore conclude there is no such authority, express or implied.[8]

If we had any doubt of the correctness of our analysis and our construction of the legislature's intent to deny initial Board rule-making authority, except as prescribed by sec. 62.50(3), Stats., it is dispelled by the resort to the legislative history of the pertinent portion of sec. 62.50 (23), as an extrinsic aid to statutory construction.

The reference to the Board's authority to prescribe a replacement rule was incorporated in sec. 62.50(23), Stats., by ch. 307, Laws of 1979 which was created by the adoption of a substitute amendment to 1979 Senate Bill 252 (S. 252 (1979)).

In its original form, S. 252 (1979) provided: "The board may prescribe its own rules regulating the police and fire departments." This bill was indefinitely postponed and the substitute amendment was adopted. Initial rule-making authority as a part of sec. 62.50(23), Stats., was expressly rejected by this course of legislative action.

---

[8] On February 1, 1982, the state attorney general issued his opinion (No. 15) which reached a similar conclusion. Although we are not bound by that opinion, we agree with that conclusion. Additionally, the attorney general opined, superficially we believe, that the Board was the final arbiter of police department policy because such policy was made through the chief's rules which in final form were subject to alteration by the Board. That opinion overlooks the circumstance that failure to regulate through rules can constitute administrative policy which is not subject to review by the Board.

Significantly, sec. 62.50 (3), Stats., accords initial rule-making authority to the Board governing the selection and appointment of members of the police and fire departments. The express grant of the initial rule-making authority in this limited area and its omission from subsec. (23) demonstrates a different legislative intention. *State v. Welkos*, 14 Wis. 2d 186, 192, 109 N.W.2d 889, 892 (1961).

Because we have concluded that the Board has no initial rule-making authority in the instance of this case, our final task in determining whether the Board exceeded its statutory authority is to determine whether the Board's "replacement rule" addresses a new subject not addressed by the Chief's rule.

The Board's ambiguous replacement rule-making authority requires us to resort to extrinsic aids to discern the legislature's intent with respect to the breadth of that authority.

We note that the rule prescribed by the Chief appears in identical form as the last paragraph of the Board's "replacement rule." There was no alteration of the policy pronounced by the Chief's rule. The Board's replacement rule engrafted upon the Chief's rule a new subject—mandatory (not permissive) relief from duty or reassignment for police officers who were involved in conduct causing death, life threatening injury or great bodily harm to others.

We find no merit in the city attorney's suggestion that Board's amendment subject is embraced within the phrase "or other extraordinary emergency" in the Chief's suspended rule. Certainly the added subject regulated by the Board's purported rule is an extraordinary occurrence. But the vehicle which the Board has utilized to justify the exercise of its replacement rule making authority is the phrase *"or other* extraordinary emergency."

Rule 5 prescribed by the Chief has twelve sections which address the subject of an officer's absence from

work which are authorized or unauthorized. The subject of sec. 11 cannot be construed to be leaves of absence. Serious family emergency is the thrust and subject of the rule. The phrase, "or other extraordinary emergency," cannot be interpreted to mean *any* extraordinary emergency, for to do so would construe serious family illness to be unnecessary surplusage. The word, "other," in the phrase calls for a referent. In the clause in question, "in case of serious illness in his immediate family or other extraordinary emergency," we are urged to read the last phrase, "other extraordinary emergency," broadly so as to include emergencies arising from work-related incidents. To do so would do violence to the language of the phrase.

"Other," as used here, is an adjectival (or adjective) pronoun,[9] a word "of a mixed nature, participating the properties both of pronouns and adjectives."[10] As an adjective, it modifies the noun, "emergency," in much the same way as does the adjective, "extraordinary." As a pronoun, however, it takes its meaning from its antecedent.[11] Here, its antecedent can only be "serious illness in his immediate family" (or some part thereof) because that is the only other item in the series joined by the disjunctive "or." Because of the limited scope of this referent for "other," one cannot read the last phrase of the sentence as an open-ended catch-all without destroying the word "other" as a pronominal. It is evident, therefore, that the additional "extraordinary emergencies" envisioned by the rule must be related to the earlier-named, explicitly stated substantive—emergencies of a domestic or familial nature.[12] A broad interpretation of

---

[9] The Oxford Universal Dictionary 1391 (3rd ed. 1955).

[10] L. Murray, English Grammar 59 (1845).

[11] R. Gorrell and C. Laird, Modern English Handbook, 560 (4th ed. 1967).

[12] We note that another specific kind of family emergency, a death in the family, is addressed in sec. 10 of Rule 5.

*any* extraordinary emergency would accord to the Board the initial rule-making authority that the legislature denied to the Board.

We have noted that the Board's rule-making authority is responsive, not initiating. Thus, a subject must be initially addressed by a rule prescribed by the Chief before the Board may respond with its own rule.[13] To construe the phrase, "or other extraordinary emergency," as any extraordinary emergency would effectively destroy the legislatively imposed limitation upon the Board's rule-making authority. Any general word or phrase would become the vehicle for a Board-initiated rule upon a subject not addressed by the Chief's rules. The limited authority of the Board to respond to the Chief's rule in the exercise of that limited overseeing of rule making for the department would be swallowed by a construction which would permit rule-initiating authority. That would stand the legislative limitation on its head.

*By the Court.*—Judgment affirmed.

MOSER, J. *(dissenting)*. I take no issue with the majority opinion on the standing of the Milwaukee Chief of Police to seek declaratory relief in this action; however, I dissent from the majority's construction of sec. 62.50 (23), Stats.

The legislature's intent is clear on the face of sec. 62.50(23), Stats., which reads in pertinent part:

---

[13] While we here expressly hold that the Board exceeded its authority in addressing a new subject in its replacement rule and in so doing we implicitly hold that the Board has authority to replace a rule with one on the same subject, we reserve ruling on the concomitant questions raised on page 11, infra, concerning related subjects and different treatments. These questions were not before us on this appeal and will have to be treated on a case-by-case basis.

The chief of each department shall prescribe rules for the government of the members of the department. Any rule prescribed by a chief shall be subject to review and suspension by the board. *The board may prescribe a rule to replace any rule the board suspends. A chief may not suspend any rule prescribed by the board.*[1] [Emphasis added.]

Construction of a statute in relation to a particular set of facts is a question of law.[2] Courts cannot construe and interpret statutes that are clear on their face.[3] A court must follow the legislative mandate by giving the language of the statute its ordinary and accepted meaning.[4] A court is to seek the purpose of the statute as a whole and to favor a construction that gives effect to that purpose over a construction which defeats the manifest object of the act.[5]

Here, the legislature, by amending sec. 62.50(23), Stats., has clearly spelled out its mandate. The purpose of the 1979 law[6] and a 1977 law[7] establish that the clear intent of the legislature was to control and curtail the autocratic rule-making power of fire and police chiefs by

[1] Ch. 307, Laws of 1979. I do not quote the whole of the amendment because issue is not taken in this case with the commission failing to follow the statutory procedures authorized in the balance of the 1979 amendment.

[2] *State v. Clausen*, 105 Wis. 2d 231, 243–44, 313 N.W.2d 819, 825 (1982).

[3] *See A.O. Smith Corp. v. Department of Revenue*, 43 Wis. 2d 420, 429, 168 N.W.2d 887, 891 (1969).

[4] *In re B.M.*, 101 Wis. 2d 12, 18, 303 N.W.2d 601, 605 (1981).

[5] *Caldwell v. Percy*, 105 Wis. 2d 354, 361–62, 314 N.W.2d 135, 140 (Ct. App. 1981).

[6] *See supra* note 1.

[7] Ch. 53, Laws of 1977 amended the same statute and stated the chief could prescribe rules but the board (police and fire commission here) could review and suspend such rule. This amending language is included in the statutory language of sec. 62.50(23), Stats. See the first two sentences of the excerpt of sec. 62.50(23) quoted on the first page of this dissent.

establishing rule review, suspension and replacement powers in the civilian board (in this case, the fire and police commission of Milwaukee) which oversees those departments of local government.

I believe the majority's decision tortures the common sense/common usage of the word "replace" to the point of obfuscating and defeating the very purpose of the legislative act. I would reverse the trial court, thereby allowing the Milwaukee fire and police commission amendment to Milwaukee Police Department rule 5, section 11, to stand because it comports with the clear and unequivocal legislative intent of civilian control over local fire and police chiefs.