STATE of Wisconsin, Plaintiff-Appellant,

v.

EDWARD KRAEMER & SONS, INC., a Domestic Corporation, Defendant-Respondent.†

Court of Appeals

*No. 91-1048. Submitted on briefs December 10, 1991.—Decided August 20, 1992.*

(Also reported in 489 N.W.2d 708.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the brief of *James E. Doyle,* attorney general, with *Philip Peterson,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Ronald W. Todd* of *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J.   The state appeals from a judgment dismissing its complaint against Edward Kraemer & Sons, Inc., alleging violations of Wisconsin's Hazardous Waste Management Act (Act), secs. 144.60–144.74, Stats. (1983–84).[1] The state seeks forfeitures for seven violations: failure to test waste, sec. 144.63(1), Stats.; failure to use appropriate containers, sec. 144.63(4), Stats.; failure to label the containers, sec. 144.63(3), Stats.; disposing of waste at an unlicensed facility, sec. 144.63(9), Stats.; transporting waste without a license, sec. 144.64(1)(a), Stats.; transporting waste without using manifest system, sec. 144.64(1)(b)3, Stats.; and impermissibly constructing a hazardous waste facility, sec. 144.64(2)(am)1, Stats. The penalty for each violation is not more than $25,000 for each day of violation. Section 144.74(2), Stats.

The primary issues are (1) whether Kraemer generated hazardous waste, (2) whether Kraemer transported

---

[1]All Wisconsin statutory references are to the 1983–84 statutes. In 1988, the legislature amended the Act. Sections 37–59, 1987 Wis. Act 384. Among other things, the amendment made changes in sec. 144.61, Stats. (definitions), sec. 144.73, Stats. (enforcement), and sec. 144.74, Stats. (penalties). The definitions of "generation" and "transport" were not changed.

hazardous waste without a license, and (3) whether Kraemer's clean-up efforts preclude liability. We conclude that Kraemer generated hazardous waste, transported hazardous waste without a license, and does not escape liability because of its clean-up efforts. We reverse and remand for a consideration of penalties.

1. *Facts*

The material facts are undisputed. Kraemer is a construction contractor. Over the years, it accumulated about 100 barrels of excess and salvaged construction material at its yard in Plain, Wisconsin. Most of the barrels contained concrete curing compound, form oil and other products left over from construction jobs. Through the rigors of time and weather, the products became unusable, labels were missing or illegible and some barrels appeared to be on the verge of leaking.

On October 29, 1986, an anonymous caller notified a Wisconsin Department of Natural Resources (DNR) warden that Kraemer had dumped about 30 barrels of toxic oil the day before in a quarry owned by Kraemer, and that another dumping would occur later in the day. The warden went to the site and saw a bulldozer digging a hole and a Kraemer truck loaded with barrels backing up to the hole. He prevented the dumping. Kraemer's safety coordinator, in charge of developing a hazardous waste program, had not authorized the dumping.

Kraemer immediately hired a technical consultant and a remedial action contractor to help clean up the site. By November 2, all contaminated soils were removed and stored in special drums. The hole was covered with plastic to prevent washing and to allow testing. Kraemer representatives met with a DNR official to discuss further measures.

On November 18, 1986, the DNR notified Kraemer that it had violated the Act. In October 1987, the DNR

notified Kraemer that it had referred the matter to the Wisconsin Department of Justice. By that time, a reclamation plan at the quarry had been completed. In March 1988, the DNR acknowledged that the plan had been successfully completed.

2. *Kraemer "Generated" Waste*

The state moved for partial summary judgment leaving only the amount of penalties for further consideration. The trial court denied that motion and granted Kraemer's motion for summary judgment dismissing the complaint. Because we apply the same summary judgment methodology as the trial court, we decide the matter without deference to its decision. *Popa v. Hertz Corp.,* 159 Wis. 2d 632, 635–36, 465 N.W.2d 213, 214 (Ct. App. 1990).

Section 144.63(1), (3) and (4), Stats., provides that "[a]ny person generating hazardous waste shall" be responsible for testing programs, use appropriate containers to store the waste, and label the containers. The state asserts that Kraemer failed to meet these responsibilities.

Kraemer argues that because it did not "generate" the waste, sec. 144.63, Stats., does not apply. Section 144.61(4), Stats., provides: " 'Generation' means the *act or process* of producing hazardous waste but does not include any manufacturing process." (Emphasis added.) Kraemer contends that the construction materials in the barrels became waste through the passage of time and not through any "act or process" by Kraemer. We disagree.

Since the Act does not define "process," we apply its ordinary and accepted meaning. *Town of Lafayette v. City of Chippewa Falls,* 70 Wis. 2d 610, 619, 235 N.W.2d

435, 440 (1975). A recognized dictionary may establish the meaning. *Id.*

"Process" is defined as "a natural progressively continuing operation or development marked by a series of gradual changes that succeed one another in a relatively fixed way and lead toward a particular result or end[;] . . . a phenomenon or condition marked by a series of slow or rapid changes throughout a period of time (the [process] of decay)[;] . . . a succession of related changes by which one thing gradually becomes something else . . .." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1808 (1976).

Kraemer stored the construction materials with the intention that they would be used. At that time the materials had value and were not waste. Over time, however, the materials deteriorated to the point that Kraemer decided that they were unusable and wanted to dispose of them. At that time the materials became waste. The deterioration of useful materials into waste is a "process" and that process occurred while the materials were in Kraemer's possession. Consequently, Kraemer "generated" hazardous waste and sec. 144.63, Stats., applies.[2]

Kraemer argues that even if it "generated" the waste, it exercised responsibility for the testing required under sec. 144.63(1), Stats. That statute provides that "[a]ny person generating hazardous waste *shall* . . . [b]e

---

[2]Generators of hazardous waste must also comply with sec. 144.63(9), Stats. That subsection provides that "[a]ny person generating hazardous waste shall . . . [a]rrange that all wastes generated by them are . . . disposed of at facilities holding a license issued under ss. 144.60 to 144.74." It is undisputed that Kraemer did not obtain a license for the hole it dug at the quarry. Therefore, Kraemer violated sec. 144.63(9) by failing to dump its waste at a licensed facility.

responsible for testing programs needed to determine whether any material generated by them is a hazardous waste." (Emphasis added.) Kraemer points out that for a year before the dumping, its safety coordinator attempted to have the contents of the barrels tested, but the testing laboratories turned her down unless she could identify the contents. We reject this argument.

The Act became effective in 1978.[3] Kraemer accumulated the construction materials over a period of twenty-five years, which included 1978. Kraemer did not test the contents of the barrels until after it dumped them in 1986. A generator's responsibility for testing its waste must meet a higher standard than Kraemer claims applies. Its unsuccessful efforts to test do not excuse it from compliance. Kraemer failed to satisfy its responsibilities for mandatory testing under sec. 144.63, Stats.[4]

3. *Kraemer "Transported" Waste*

Section 144.64(1)(a), Stats., provides: "No person may transport hazardous waste without a license issued under this subsection." It is undisputed that Kraemer did not have that license.

Kraemer argues, however, that it did not "transport" waste within the meaning of sec. 144.61(12), Stats. That subsection provides: " 'Transport' means the

---

[3]Section 21, ch. 377, Laws of 1977.

[4]Kraemer does not contest the state's assertion that it failed to use appropriate containers to store its waste, contrary to sec. 144.63(4), Stats.

Kraemer argues that until it completed its tests on the waste, it could not label the containers and therefore did not violate sec. 144.63(3), Stats. We reject this argument. If Kraemer would have promptly tested its waste, it could have complied with the labeling requirement. Kraemer cannot evade the requirements of one provision by its failure to comply with the requirements of another.

movement of hazardous wastes between facilities which are subject to or require a license under this subchapter [IV] or the resource conservation and recovery act." Kraemer contends that neither its yard at Plain nor its quarry are "facilities which are subject to or require a license" under subchapter IV of ch. 144, Stats. We disagree.

### A. *Yard at Plain as a Solid Waste Facility*

Section 144.43(5), Stats., defines "solid waste facility" as a "facility for . . . solid waste storage . . . and includes commercial [and] industrial . . . establishments or operations."[5] Since Kraemer's yard stored solid waste, it was a solid waste facility. Solid waste facilities require licenses under sec. 144.44(4)(a), Stats. Thus, the yard at Plain was a facility which required a license under subchapter IV.

### B. *Quarry as a Hazardous Waste Facility*

Section 144.61(5m); Stats., provides: " 'Hazardous waste facility' means a facility for the treatment, storage or disposal of hazardous waste and includes the land where the facility is located." It is undisputed that Kraemer disposed of hazardous waste in a hole it dug in the quarry.

Kraemer argues that its quarry was not a "facility" as that term is used in sec. 144.61(5m), Stats. We disagree. Since the Act does not define "facility," we apply its ordinary and accepted meaning. *Town of Lafayette,* 70 Wis. 2d at 619, 235 N.W.2d at 440.

"Facility" is defined as "something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular func-

---

[5] "Solid waste" includes "discarded or salvageable materials, including solid, liquid, semi-solid, or contained gaseous materials resulting from industrial [and] commercial . . . operations." Section 144.01(15), Stats.

tion or to serve or facilitate some particular end." WEB-STER'S THIRD NEW INTERNATIONAL DICTIONARY 812–13 (1976). By digging the hole to receive the waste, Kraemer constructed a facility for hazardous waste.[6] The quarry was a facility.[7]

Hazardous waste facilities require licenses. Section 144.64(2)(am)2., Stats. Thus, the quarry was a facility which required a license under subchapter IV.

Because Kraemer moved hazardous waste between facilities—its yard at Plain and the quarry—that require licenses under subchapter IV of ch. 144, Stats., it transported hazardous waste without a license and therefore violated sec. 144.64(1)(a), Stats.[8]

### 4. *Kraemer's Clean-up Does Not Preclude Liability*

### A. *Referral Not Required for Enforcement*

Section 144.73(1), Stats., provides:

> If the department [DNR] determines that any person is in violation of any requirement of ss. 144.60 to 144.74, the department shall give written notice to the violator of his or her failure to comply with the requirement and *if compliance is not obtained within 30 days after notice or within such reasonable time*

---

[6]Because Kraemer constructed a hazardous waste facility, it violated sec. 144.64(2)(am)1., Stats., which provides: "No person may . . . [c]onstruct a hazardous waste facility unless the person complies with s. 144.44(2) to (3)." Kraemer does not assert that it complied with sec. 144.44, Stats.

[7]Because the definition of "hazardous waste facility" includes "the land where the facility is located," the entire quarry, not just the quarry hole, was a hazardous waste facility. Section 144.61(5m), Stats.

[8]Because Kraemer generated and transported hazardous waste without complying with the rules relating to use of a manifest system, it violated secs. 144.63(6) and 144.64(1)(b)3., Stats.

*in which compliance may be accomplished,* may issue an order requiring compliance within a specified time period or *may refer the matter to the department of justice for enforcement.* (Emphasis added.)

Kraemer argues that because its compliance was obtained within a reasonable time, the DNR was not authorized to refer the matter to the department of justice for enforcement. We disagree.

The department of justice has independent authority to enforce the provisions of ch. 144, Stats. Section 144.98, Stats. It need not wait for a referral by the DNR. Moreover, this is an action for forfeiture. While the provision allowing for injunctive relief[9] requires a referral for enforcement, the forfeiture provision[10] does not. The omission of the referral requirement indicates a different legislative intention. *Breier v. Balen,* 114 Wis. 2d 237, 248, 338 N.W.2d 304, 309 (Ct. App. 1983). A referral was not required to subject Kraemer to forfeitures.

*B. Compliance Order Not Required for Enforcement*

The forfeiture provision, sec. 144.74(2), Stats., provides in part: "The time elapsed prior to the expiration of a compliance order shall not constitute a violation." The DNR did not issue a compliance order. For that

---

[9]Section 144.74(1), Stats., provides in part: "The department of justice, *upon a referral under s. 144.73,* may initiate a civil action for a temporary or permanent injunction for any violation of [the Act] . . .." (Emphasis added.)

[10]Section 144.74(2), Stats., provides:

Any person who violates ss. 144.60 to 144.74, or any rule promulgated under ss. 144.60 to 144.74, or any term or condition of a license issued under ss. 144.60 to 144.74, shall be subject to a forfeiture of not more than $25,000 for each day of violation. The time elapsed prior to the expiration of a compliance order shall not constitute a violation.

reason, Kraemer argues that no violation occurred. Again we disagree.

The DNR is not required to issue a compliance order. Section 144.73(1), Stats., provides that if a violator fails to comply after a notice of violation issues, the DNR "*may* issue an order requiring compliance." Thus, the statute authorizes but does not require the DNR to issue a compliance order. That interpretation is consistent with the forfeiture provision's reference to "a" compliance order rather than "the" compliance order. Section 144.74(2), Stats.

Because enforcement of the Act is not contingent on the issuance of a compliance order, Kraemer is subject to forfeitures under sec. 144.74(2), Stats. We reverse the judgment and remand to the trial court to determine the amount of forfeitures.

*By the Court.*—Judgment reversed and remanded with directions.