IN RE DANE COUNTY REGIONAL AIRPORT:

M. PELFRESNE, Appellant,†

v.

DANE COUNTY REGIONAL AIRPORT, Respondent.

Court of Appeals

*No. 92–0520. Submitted on briefs October 8, 1993.—Decided
July 28, 1994.*

(Also reported in 521 N.W.2d 460.)

†Petition to review denied.

For the appellant the cause was submitted on the briefs of  *Cynthia Fiene* of *All Legal Services, S.C.,* of Madison.

For the respondent the cause was submitted on the brief of  *Timothy D. Fenner* and *Guy DuBeau* of *Axley Brynelson* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   M. Pelfresne appeals from an order denying his motion for expenses he claims to have incurred in litigating condemnation proceedings instituted by the Dane County Regional Airport. The issue is whether the county "abandoned" the proceedings within the meaning of § 32.28(3)(a), STATS., which allows a condemnee to recover litigation expenses when condemnation proceedings are commenced and then abandoned. We affirm.

The county proceeded under § 32.05, STATS., which governs condemnation proceedings for transportation facilities. Under the statutory process, if attempts to negotiate acquisition of the property are unsuccessful, the condemnor files a *lis pendens* and sends a jurisdictional offer to the landowner setting forth a specific sum for acquisition of the property. Section 32.05(2a), (3) and (4). If the owner does not accept or otherwise respond to the jurisdictional offer, the condemnor prepares and files an "award of damages"—a document that sets a date for the "taking" and states the compensation to be paid to the landowner (which must at least equal the amount of the jurisdictional offer). Section 32.05(6) and (7). On or before the date set for the taking, the condemnor deposits with the county clerk a check for the amount awarded, less outstanding delinquent tax liens and prorated taxes. Section 32.05(7)(d). The condemnee then has the option of taking the net amount on deposit by petition to the circuit court or appealing the award. Section 32.05(7)(d) and (9).

The county followed that process with respect to Pelfresne's property, and this action began in January 1991 when Pelfresne filed a petition under § 32.05(7)(d), STATS., seeking payment of the money on

deposit with the clerk. Shortly thereafter, however, he filed a motion asking that the *lis pendens*, the jurisdictional offer and the award of damages be declared void and "expunged from the record." The motion was grounded on the fact that the amount of money deposited by the county was approximately $3,000 less than that stated in the award of damages.[1]

The county argued for denial of the motion, asserting that the reduced amount reflected a deduction of delinquent and current taxes on the property and that it was simply a "technical infirmity" that the reduced amount had not appeared on the award of damages. The circuit court concluded that the award was "misleading" in that it stated that taxes had already been deducted and granted Pelfresne's motion to nullify and expunge the *lis pendens*, jurisdictional offer and award of damages from the record. When it received the order, the county moved for return of the funds it had deposited with the clerk. Pelfresne did not oppose the motion and the court granted it.

Pelfresne then moved for his litigation expenses pursuant to § 32.28(3)(a), STATS.,[2] claiming that the

---

[1] The award was in the sum of $110,300, which was stated to include deductions for pro-rated real estate taxes, delinquent taxes, interest and penalties. The notification Pelfresne received from the clerk, however, showed a deposit of only $107,128.97.

[2] Section 32.28, STATS., provides in relevant part:

(1)   In this section, "litigation expenses" means the sum of the costs, disbursements and expenses, including reasonable attorney . . . fees necessary to prepare for or participate in actual or anticipated proceedings before the condemnation commissioners, board of assessment or any court under this chapter.

. . . .

(3)   In lieu of costs under ch. 814, the court shall award litigation expenses to the condemnee if:

county had "abandoned" the proceedings by failing to appeal the order voiding the award of damages and by moving to withdraw the deposited funds. The court denied the motion and Pelfresne appeals.

The county argues first that § 32.28, STATS., which permits recovery of litigation expenses where condemnation proceedings are abandoned, does not apply to "transportation" condemnations brought under § 32.05, STATS., as this one was, but only to those grounded on § 32.06, STATS., which sets forth the procedures to be followed for condemnations "in other than transportation matters." The argument proceeds as follows: (1) although the general language of the cost-recovery statute, § 32.28, does not limit its application to any particular type or types of condemnation, it allows recovery only where "[t]he proceeding is abandoned by the condemnor"; (2) because the nontransportation condemnation statute, § 32.06(9), contains a specific procedure for "abandoning" condemnations, but the transportation condemnation statute, § 32.05, does not, the cost-recovery provisions of § 32.28 apply only to nontransportation condemnations.

■

Section 32.28(1), STATS., however, defines "litigation expenses" as including fees for proceedings "under this chapter." We agree with Pelfresne that this language appears to evince an intent on the part of the legislature to make the provision applicable to all condemnations, whether brought under § 32.05 or § 32.06, STATS. However, we conclude that, when read together, the statutes are ambiguous in that they are capable of conflicting reasonable interpretations. It is therefore proper to consider their legislative history. *See Labor & Farm Party v. Elections Bd.*, 117 Wis. 2d 351, 355,

---

(a)   The proceeding is abandoned by the condemnor[.]

344 N.W.2d 177, 179 (1984) (appellate courts may look to legislative history of a statute where its scope is unclear); *see also State v. White*, 97 Wis. 2d 193, 198, 295 N.W.2d 346, 348 (1980) (even where statute is unambiguous on its face, it can be rendered ambiguous by its interaction with, and relation to, other statutes).

Prior to 1978, the provision allowing awards of litigation expenses upon abandonment of condemnation proceedings appeared in § 32.06, STATS., the "non-transportation" statute.[3] In 1978, the legislature amended several statutes in ch. 32.[4] Among the amendments that were eventually enacted, one deleted the cost-recovery provisions of § 32.06 and another created the separate "costs" statute that exists today, § 32.28, STATS.[5] A legislative council note accompanying the bill explained that the then-existing language in § 32.06 allowed an award of litigation expenses "when[ ] a condemnation proceeding *under s. 32.06* is abandoned by the condemnor," and that the effect of the amendments would be to "require[ ] such expenses to be awarded *whenever a condemnation action is abandoned* by the condemnor." Legislative Council Note, 1977 A.B. 1077 § 6 (emphasis added).[6]

---

[3] Section 32.06(9)(a), STATS., 1975, authorized the condemnor to petition the court to abandon the proceedings and stated: "The circuit judge shall grant such petition upon such terms as he deems just, which terms may include reasonable expert witness fees incurred by condemnee for not to exceed 3 expert witnesses and a reasonable attorney's fee both as approved by the judge."

[4] Laws of 1977, ch. 440.

[5] 1977 A.B. 1077 §§ 6 and 11.

[6] The council's note to the section of the bill creating the separate costs statute, § 32.28, STATS., states that the new stat-

■ Based on this history, we conclude that § 32.28(3)(a), STATS., is not limited to the specific abandonment procedure set forth in § 32.06(9), STATS., but applies to all proceedings under ch. 32 including those, like Pelfresne's, commenced under § 32.05, STATS. We next consider whether the proceeding was abandoned in this case.

Pelfresne argues that the "entire" condemnation proceeding need not be abandoned in order for him to recover litigation expenses under § 32.28, STATS. He claims that all that is necessary is that the county abandon the proceeding that began with his petition to recover the deposited funds. He asserts that the county did so when it "voluntarily withdrew" the funds on deposit with the clerk. The county argues, on the other hand, that we should consider whether it abandoned the condemnation effort in its entirety; and it maintains that it did not. We agree with Pelfresne.

As noted above, § 32.28(3)(a), STATS., authorizes an award of litigation expenses when the condemnor abandons "the proceeding." Section 32.28(1) defines "litigation expenses" as including expenses for "actual or anticipated proceedings before the condemnation commissioners, board of assessment or any court under

ute "extends the [cost-recovery] rule to actions under s. 32.05." Legislative Council Note, 1977 A.B. 1077 § 11.

The council staff also prepared an "Information Memorandum" on the 1977 amendments to the condemnation laws, noting at one point that landowners would henceforth be able to recover the full expenses of litigation whenever "[t]he condemnor abandons the proceedings"—and that the new § 32.28, STATS., "applies to *all condemnation proceedings* which are in progress on October 1, 1978 or which are commenced thereafter . . . ." Information Memorandum 78-21, June 19, 1978.

this chapter." Reading the two together, we conclude that the word "proceeding" as it appears in § 32.28(3)(a) refers to the "actual or anticipated proceedings" described in subsec. (1), and not to the condemnation as a whole. It follows that litigation expenses may be awarded whenever a condemnor abandons any proceeding in the process, whether before the commissioners, the board, or the court. It is not necessary that the condemnor abandon the entire condemnation effort in order for the cost-recovery provisions of § 32.28 to apply. The question becomes, then, whether the county abandoned the proceeding commenced by Pelfresne's petition for distribution of the deposited funds.

The trial court concluded that it had not, relying on *Martineau v. State Conservation Comm'n*, 54 Wis. 2d 76, 194 N.W.2d 664 (1972). The *Martineau* court held that the cost-recovery statute then in effect, § 32.06(9), STATS., 1971, which set forth a procedure for the condemnor to obtain court approval when it "desire[d] to abandon the proceeding," plainly contemplated a voluntary abandonment and did not apply where, as was the situation in *Martineau*, the court itself had ruled that the condemnor lacked authority to take the property. *Id.* at 84-85, 194 N.W.2d at 669. While, as may be seen, the 1971 statute plainly contemplated affirmative action on the condemnor's part to obtain court approval of its abandonment of the proceeding, we think the same result should be reached under the more benign language of § 32.28, STATS.

Section 32.28, STATS., as we have indicated above, provides for recovery of litigation expenses when "[t]he proceeding is abandoned by the condemnor[.]" And while the legislature has not defined or otherwise stated what constitutes "abandonment" in such a situa-

tion, we may, and often do, apply the ordinary and accepted meaning of a word provided by recognized dictionaries in order to determine the meaning of a statute. *State v. Edward Kraemer & Sons, Inc.*, 170 Wis. 2d 646, 649-50, 489 N.W.2d 708, 710 (Ct. App. 1992). "Abandon" is defined in WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 43 (1991) as the "surrender[ing]" or "giv[ing] up" of or "withdraw[ing]" from a particular position or activity—all of which imply some type of action—or at least volition—in the process.

We thus read § 32.28(3)(a), STATS., as applying only where the condemnor voluntarily abandons a proceeding. It does not apply where, as here, the trial court—on the condemnee's motion and over the strong objection of the condemnor—entered an order that had the effect of dismissing the proceeding.[7]

Pelfresne disagrees, asking us to rule that, when the county deposited less than the amount stated in its award of damages and later moved to withdraw the deposit, it "abandon[ed] the proceeding" within the meaning of § 32.28(3)(a), STATS. He offers no authority for the proposition, however, and we have often said that we do not consider arguments unsupported by references to legal authority. *State v. Shaffer*, 96 Wis. 2d 531, 545-46, 292 N.W.2d 370, 378 (Ct. App. 1980). We also agree with the county that its strong and active opposition to Pelfresne's motion is indicative not of an

---

[7]The trial court's order does not expressly state that the action was being dismissed. It states, however—as it was drafted by Pelfresne's attorney—that the award of damages, the *lis pendens* and the jurisdictional offer are all "held for naught" and "expunged from the record."

intent to abandon the condemnation, but rather to seek its continuance.[8]

As for the county's withdrawal of the deposited funds, Pelfresne's success in having the court nullify and expunge from the record the *lis pendens*, the jurisdictional offer and the award of damages did indeed, as the county suggests, "pull[ ] a string that unravelled the condemnation proceeding." With no offer or award, and no *lis pendens*, there was no basis in the condemnation statutes for the funds to remain on deposit with the clerk. As the county points out, the effect of the court's ruling was to require the county to go back and repeat many of the steps leading up to acquisition of the property—which it did. The proceeding was not abandoned. Indeed, in many respects it never stopped.[9]

---

[8] The county maintained in the trial court what it believed to be a valid argument: that the amount deposited with the clerk was lower than that stated in the award because of the deduction for taxes. It asserts on appeal that the failure to include the "net" figure in the award was a "technical" error that Pelfresne successfully used as a means for voiding the jurisdictional offer and *lis pendens*.

[9] Again, Pelfresne disagrees, arguing that, because the county could have pressed its condemnation through other avenues without withdrawing the funds, the withdrawal should be held to constitute abandonment of the condemnation proceedings. He points out that the county could have filed an amended award of damages after the trial court's order under § 32.05(7) (a), STATS. That section, however, allows such an amendment only "for the purpose of correcting errors wherein the award as recorded differs from the jurisdictional offer," and no such error was present in this case. Indeed, as indicated above, the jurisdictional offer had been nullified and expunged by the trial court's order. It is also true that the county could have filed a new jurisdictional offer and continued the condemnation proceedings, since § 32.05 contains no time limit as to when a

547

For these reasons, we conclude that Pelfresne is not entitled to an award of litigation expenses under § 32.28, STATS., because the county did not abandon the proceeding on his petition for distribution of the funds deposited with the clerk.

Several motions remain pending. Pelfresne moved to strike the county's brief for referring to matters not of record in the case. We grant the motion, but only with respect to those parts of the brief in which the nonrecord references occur. Both parties moved for judicial notice of documents outside the record. We deny the motions. Finally, the county claims Pelfresne's appeal was frivolous and seeks costs and fees under RULE 809.25(3), STATS. Given the ambiguity we have concluded exists in the applicable statutes, we cannot say the appeal was frivolous as that term is defined in the rule. Accordingly, we deny the county's motion.

*By the Court.*—Order affirmed.

jurisdictional offer may be filed. Such a procedure was approved in *Wisconsin Town House Builders, Inc. v. City of Madison*, 37 Wis. 2d 44, 55, 154 N.W.2d 232, 237 (1967). Pelfresne has not offered any authority that such a procedure is mandatory, however, and we decline to so hold. *See State v. Shaffer*, 96 Wis. 2d 531, 545-46, 292 N.W.2d 370, 378 (Ct. App. 1980). Nor is it material that the county elected to reappraise the property rather than file a new jurisdictional offer. The county felt, according to one of its witnesses, that the appraisal "was getting quite old," and that it would not be "prudent" to continue with "such an old appraisal." We do not see that election as an abandonment of the proceeding, as Pelfresne argues.