STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott David SHAFFER, Defendant-Appellant.

Court of Appeals

No. 79–1046–CR. Submitted on briefs March 12, 1980.—Decided
April 24, 1980.
(Also reported in 292 N.W.2d 370.)

532

For the defendant-appellant, the cause was submitted on the briefs of *Louis B. Butler, Jr.*, assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom on the brief was *Sally L. Wellman,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J. Defendant Shaffer appeals claiming that: his confession was taken in violation of his *Miranda* rights; his confession was involuntary; the trial court erred in failing to give a requested intoxication instruction; the trial court erroneously allowed the state to ask leading questions of an expert witness; and reversible error was committed by the prosecutor's reference during closing arguments to facts not in evidence concerning prior misconduct of the defendant. We conclude that there was no error in Shaffer's trial requiring reversal and we affirm the judgment of the circuit court.

On July 15, 1978, at approximately 1:30 a.m., two armed men entered the Hideout Tavern in the city of West Allis. One of the men announced that "[t]his is a holdup," and everyone was told to "put your wallets on the bar." Both were carrying "shotguns," and aiming them in the direction of the bar. The owner of the tavern, Richard LaSavage, then produced a handgun, and told the two men to "freeze." Shots were exchanged and LaSavage was killed. One of the men was then subdued by a bar patron but the other escaped. The man who was subdued was identified as John Michael Kennedy. Scott David Shaffer, the defendant in this case, was charged as the other participant in the crime.

Shaffer was charged with first-degree murder, party to a crime, contrary to secs. 940.01 and 939.05, Stats; robbery contrary to sec. 943.32(1)(b); and concealing identity, contrary to sec. 946.62. After a trial to a jury, Shaffer was convicted of one count of second-degree murder, contrary to sec. 940.02; one count of attempted armed robbery, contrary to secs. 943.32(1)(b) and 939.-32; and one count of concealing identity, contrary to sec. 946.62.

## THE CONFESSION

Shaffer challenges his confession on the grounds that his right to remain silent was not "scrupulously honored," and that his intoxicated state at the time of arrest prevented his confession from being voluntary. The confession was taken under the following circumstances:

At 5:11 a.m. on July 15, 1978, police officer Thomas Walloch arrested Shaffer outside his home for the offenses at issue. Officer Walloch advised Shaffer of his constitutional rights prior to any questioning by reading from a *"Miranda* card." Shaffer stated that he understood those rights, and stated that he would answer questions without an attorney present. Walloch then began questioning Shaffer concerning his whereabouts on the previous evening. Shaffer responded that he had been to some taverns and had then walked home. Shaffer also admitted that he owned a shotgun, but then stated that he did not want to answer any more questions. Walloch immediately stopped the questioning, which had lasted less than five minues, and Shaffer was taken to the police station. During his encounter with Walloch, Shaffer never requested an attorney.

Upon arrival at the West Allis police department Shaffer was turned over to Walloch's superior officers. Walloch failed to inform his superiors that Shaffer had exercised his right to discontinue questioning. Officer John Butorac testified that at approximately 5:20 a.m. Walloch brought Shaffer to him at the police station. Walloch then left the scene.

Butorac brought Shaffer into an interrogation room and told him to "sit down and relax." Another officer, Detective Risse, was also present in the room with Butorac and Shaffer. Shaffer was again informed of his *Miranda* rights. Shaffer stated that he did not want an attorney. He also stated that he was willing to answer questions, but that he "didn't know what this was all

about." Butorac then explained that this was a very "serious matter," and that a man had been shot and had died. Shaffer stated that be did not know how much he should say because he did not want to "hang himself." Butorac responded that Shaffer's answer indicated that he did "have something, some knowledge of what happened." Shaffer then gave a complete oral statement confessing his involvement in the crime. The entire session lasted approximately one and one-half hours. Shaffer's oral confession took approximately forty-five minutes of that time.

Concerning Shaffer's claimed intoxication, Walloch testified that he did not detect that Shaffer was experiencing any difficulty walking or standing, but that he did smell alcohol on Shaffer's breath after they entered the police vehicle. He testified that: Shaffer's demeanor was pleasant; he did not slur his words; and he was coherent and responded in an appropriate manner to questions. Butorac also testified that: Shaffer's eyes appeared bloodshot; he had an odor of alcoholic beverage on his breath; but he did not illustrate any other outward signs of drug or alcohol influence, such as loss of balance, slurred speech, or a staggering gait. Butorac's opinion, based upon his experience as a police officer, was that Shaffer was not under the influence of any intoxicant. Shaffer did not claim, at the time, that he was intoxicated.

Shaffer filed a pretrial motion to suppress the confession. A *Miranda-Goodchild* hearing was held prior to trial and the trial court found the confession to be admissible.

## The Right to Discontinue Questioning

In *Michigan v. Mosley*, 423 U.S. 96 (1975), the United States Supreme Court, interpreting *Miranda v. Arizona*, 384 U.S. 436 (1966), ruled that a defendant's right to

cut off questioning during a custodial interrogation must be "scrupulously honored." Shaffer argues that since he was questioned at 5:11 a.m., exercised his right to discontinue questioning, and was again questioned at 5:20 a.m., his right to remain silent was not "scrupulously honored." While we view the nine-minute interval between questioning sessions as a serious constitutional question, we nonetheless affirm the trial court's ruling that there was no violation of Shaffer's *Miranda* rights.

In *Mosley*, the defendant was arrested on robbery charges and taken to the robbery bureau on the fourth floor of the Detroit police department headquarters building. After being given his *Miranda* warnings, he declined to discuss the robberies. The defendant was then transferred to the ninth floor of the same building. After an interval of two and one-half hours, the defendant was given a fresh set of *Miranda* warnings, and questioned by another officer concerning a separate homicide offense. After a fifteen-minute interrogation, the defendant confessed to the homicide. 423 U.S. at 97–98. The Court affirmed the trial court's ruling that the confession was admissible, and ruled that the defendant's right to cut off questioning had been "scrupulously honored." *Supra* at 104.

The Supreme Court in *Mosley* was primarily concerned with protecting an accused's right to "cut off" questioning. *Supra* at 103. The court rejected the argument that all subsequent interrogations were *per se* invalid under *Miranda*. *Supra* at 102. Whether the right to cut off questioning was "scrupulously honored" depends upon a variety of factors, including the time interval between interrogation sessions, whether the subsequent interrogation was conducted by the same or a different officer or officers, whether it concerned the same or a different offense, whether it was conducted in the same or a different environment, and whether a fresh set of *Miranda*

warnings was given. 423 U.S. at 104–05. *See also Leach v. State,* 83 Wis.2d 199, 209, 265 N.W.2d 495, 499–500 (1978). An additional factor that was considered by the *Mosley* court, and is sometimes overlooked, was whether the subsequent interrogating officer knew about the interrogation. 423 U.S. at 105. We think it important that there be no careless, neglectful or intended lack of communication between successive interrogating officers designed to accomplish repeated interrogation in spite of the defendant's expressed desire to cut off questioning. We would not countenance such practices.

In this case, Shaffer was questioned by Walloch at the time of arrest. He was given full *Miranda* warnings, and the questioning ended as soon as Shaffer exercised his right to remain silent. He was transferred to the police station, and questioned there by Butorac. Walloch failed to inform Butorac or any other police officer that Shaffer had cut off questioning. He was given a fresh set of *Miranda* warnings and explicitly waived both his right to remain silent and his right to counsel. Although he was questioned concerning the same crime, he was in a different environment, and questioned by a different officer.

Most importantly, there is no evidence of collaboration between officers Walloch and Butorac to break down Shaffer's defenses. The record clearly indicates that Butorac conducted his examination without any knowledge of the prior questioning or Shaffer's prior exercise of his right to remain silent. There is no testimony from which one could infer that such lack of knowledge was carelessly, neglectfully or intentionally accomplished. Like *Michigan v. Mosley,*

[t]his is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated ef-

forts to wear down his resistance and make him change his mind. 423 U.S. at 105–06.[1]

Shaffer argues that the nine-minute interval between questioning indicates that his right to cut off questioning was not scrupulously honored. Although *Mosley* states that *Miranda* may not be frustrated by resuming questioning after a "momentary cessation," that was not the case here. Questioning was resumed only after Shaffer's physical transfer to the police station.

In *Zelenka v. State,* 83 Wis.2d 601, 611, 266 N.W.2d 279, 283 (1978), for example, the Wisconsin Supreme Court held that the dictates of *Mosley* were met where there was a half-hour interval between interrogations and the defendant was interrogated about the same offense by the same officer. A nine-minute interval between successive interrogations is a disturbingly short period of time; in fact, standing alone in the record, the nine-minute interval, or a longer interval, might compel reversal.

In this case, there is no indication in the record of overbearing or coercive tactics by the state. Shaffer was simply transferred to the police station after his arrest. There, as a matter of procedure, he was taken into an interrogation room. He was given and waived his *Miranda* rights. He was then questioned by Butorac, who did not know and had no reason to know that Shaffer had earlier exercised his right to remain silent. Shaffer confessed after straightforward, noncoercive questioning. The circumstances clearly indicate that Shaffer's right to cut off questioning was "scrupulously honored."

Our conclusion is in accord with the recent Wisconsin Supreme Court decision in *Wentela v. State,* 95 Wis.2d

---

[1] *But cf. United States v. Collins,* 462 F2d 792 (2nd Cir. 1972) (confession admissible where defendant advised of his rights and questioned no less than six times during 21 hours in custody).

283, 290 N.W.2d 312 (1980). In that case, Wentela agreed to a polygraph examination concerning a murder. During the polygraph examination, Wentela said "I think I need an attorney," or "I think I should see an attorney." The polygraph examiner left the room. The arresting officer then entered the interrogation room for security reasons. Approximately ten to twenty minutes after the termination of the polygraph examination, and without a reiteration of *Miranda* warnings, the arresting officer began asking Wentela accusatory questions. The polygraph examiner reentered the room, and he asked Wentela an accusatory question. Wentela subsequently confessed, and that confession was held admissible by the trial court. On appeal, the Wisconsin Supreme Court reversed and remanded.

Although the court in *Wentela* was concerned with the short time interval between interrogation sessions, it was the totality of circumstances surrounding the confession that compelled reversal. In summary, the court stated: *"In these circumstances,* such an interval is clearly insufficient." *Supra* at 296, 290 N.W.2d at 318. [Emphasis supplied.] The "circumstances" referred to by the court in *Wentela* are clearly distinguishable from the circumstances in this case. Unlike this case, there is a clear implication in the *Wentela* decision that the officers involved knew of Wentela's exercise of one of his *Miranda* rights during the polygraph examination. *Supra* at 287–88, 290 N.W.2d at 314. There was, in essence, collaboration among those involved to break down Wentela's defenses. Also unlike this case, there was no reiteration of *Miranda* warnings prior to the subsequent interrogation. The subsequent interrogation by both the arresting officer and the examiner was conducted in a situation where it seemed that no interrogation in fact was being conducted. It was only after Wentela affirmatively gestured that he was guilty that

*Miranda* warnings were again given. *Supra* at 289, 290 N.W.2d at 315.

We cannot establish, and we do not read *Wentela* to require, an inflexible prophylactic rule that nine minutes is too short a time interval while one-half hour or two and one-half hours is sufficient. Indeed, a long period of time between repeated questioning sessions often can be more coercive than a short interval: "[T]he very passage of time while a person continues to be in police detention will create fears and pressures undermining the will to insist on one's right to silence and right to counsel." Sec. 140.8(2) (d) ALI, *Model Code of Pre-Arraignment Procedure* (Official Draft, 1975), at 52. Whether the time interval between interrogations constituted a "significant period of time," must be judged in the context of all the circumstances to determine whether the defendant's right to cut off questioning was "scrupulously honored." Although the confession in this case was the product of a second interrogation of Shaffer commenced nine minutes after the first interrogation was cut off, we do not conclude that the circumstances demonstrate a failure to scrupulously honor Shaffer's request to discontinue questioning "by persisting in repeated efforts to wear down his resistance and make him change his mind." *Michigan v. Mosley,* 423 U.S. at 105.

Shaffer initially invoked his right to remain silent and that request was honored. The decision to remain silent is not irrevocable, and Shaffer could waive that right after his initial decision to claim it. *Wentela v. State, supra* at 294, 290 N.W.2d at 317; *United States v. Rooks,* 577 F.2d 33, 37 (8th Cir. 1978), *cert. denied,* 439 U.S. 862; *Wright v. State,* 46 Wis.2d 75, 88, 175 N.W.2d 646, 653 (1970). It is clear from the record that Shaffer did waive his right to remain silent at the police station. The trial court's determination that Shaffer's right to

cut off questioning was scrupulously honored is not contrary to the great weight and clear preponderance of the evidence and is therefore affirmed.

## Voluntariness

Shaffer contends that his confession was not the product of a free and unconstrained will. He argues that his own testimony at trial was that he had been drinking the night before the trial and that he had taken three capsules of Nembutals containing 100 milligrams each. A stipulation was entered into at the trial that a urine test conducted after Shaffer's arrest revealed the presence of both alcohol and phenobarbital, a barbiturate, in Shaffer's urine at the time of arrest, although the quantity of the drug could not be determined. The two police officers involved also smelled alcohol on Shaffer's breath. Shaffer also argues that he had just been awakened at the time of the interrogation, that his eyes were bloodshot, and that he was frightened during the interrogation and in fact broke down and cried during the course of his statement. All these factors, Shaffer contends, indicate that his confession was involuntary.

To be admissible, a confession must be the voluntary product of a free and unconstrained will. *Brown v. State,* 64 Wis.2d 581, 586, 219 N.W.2d 373, 376 (1974). Voluntariness is determined by the totality of circumstances, weighing the personal characteristics of the confessor against any pressures to which he was subjected to induce the confession. *State v. Wallace,* 59 Wis.2d 66, 81, 207 N.W.2d 855, 863 (1973) ; *McAdoo v. State,* 65 Wis.2d 596, 606, 223 N.W.2d 521, 527 (1974) ; *Johnson v. State,* 75 Wis.2d 344, 352, 249 N.W.2d 593, 598 (1977). Factors considered are the age of the accused, his education and intelligence, his physical and emotional condition, whether he has had prior experience with the

police, whether he was apprised of his rights, whether he requested counsel and the response to any such request, the length and condition of his interrogation, and any physical or psychological pressures, inducements, methods or strategies used by the police to obtain a confession. *State v. Verhasselt,* 83 Wis.2d 647, 653–54, 266 N.W.2d 342, 345 (1978).

The record does not establish that coercive tactics were used in this case, or that the interrogation was unduly long. Shaffer was also apprised of his rights, and there is nothing in the record to indicate he had insufficient capacity to understand and waive those rights. While the record reveals that Shaffer was emotional during his oral confession, the record is insufficient to establish that his confession was the product of physical or psychological pressures.

Shaffer contends that he was under the influence of intoxicants at the time of the confession. The state argues that this court should not consider this claim because the stipulation concerning drugs and alcohol was not presented to the trial court at the pretrial *Miranda-Goodchild* hearing on voluntariness. *See Hill v. State,* 91 Wis.2d 315, 319, 283 N.W.2d 585, 587 (Ct. App. 1978). Even if we consider the stipulation as evidence contrary to the trial court's finding, there was ample and sufficient evidence in the record to support the finding of the trial court that the confession was voluntary. Although the stipulation was to the effect that there was some alcohol[2] and an unknown quantity of drugs in Shaffer's urine, there was also testimony from the police officers that Shaffer was coherent and respon-

---

[2] The urine sample indicated a blood alcohol level of 0.029%. Although not controlling, a finding of 0.05% or less by weight of alcohol in the blood is *prima facie* evidence that a person is not under the influence of alcohol. Sec. 885.235(1)(a), Stats.

sive during questioning, and that he did not show any other physical signs of intoxication. The voluntariness of a confession is essentially a factual question, and conflicting factual evidence must be resolved in favor of the trial court's finding. *State v. Verhasselt, supra,* at 653, 266 N.W.2d at 345; *Turner v. State,* 76 Wis.2d 1, 18, 250 N.W.2d 706, 715 (1977). The trial court's finding that the confession was voluntary is not contrary to the great weight and clear preponderance of the evidence and is affirmed.

## INTOXICATION INSTRUCTION

At trial, Shaffer requested that the following instruction be submitted to the jury: "You are instructed that the term intoxication relates to that mental and physical state induced by alcohol, drugs or a combination of both." Shaffer also requested that the court submit instructions on the lesser included offenses of homicide by the intoxicated use of a weapon and homicide by reckless conduct. The trial court refused to give the proffered instructions and Shaffer claims error in this refusal.

The question of the intoxication instruction need not detain us long. If we were to assume that the failure to give the instruction was error (it was not), then that failure was harmless error because the defendant was convicted of second-degree murder. Intent to kill, which may be negatived by intoxication, is not an element of second-degree murder and therefore the intoxication instruction is irrelevant to the crime of which the defendant was convicted. *See Ameen v. State,* 51 Wis.2d 175, 184–85, 186 N.W.2d 206, 212 (1971); *State v. Verhasselt, supra* at 665, 266 N.W.2d at 351.

Without reviewing the evidence, Shaffer also complains that his requested instructions with respect to

homicide by reckless conduct (sec. 940.06, Stats.) and homicide by intoxicated use of a firearm (sec. 940.09) should have been given as lesser included crimes. Our independent review of the evidence leads us to conclude, as did the trial court, that there is no reasonable ground in the evidence for acquittal upon the lesser included crime of second-degree murder and conviction on the lesser charges of homicide by reckless conduct or homicide by intoxicated use of a firearm. *Muller v. State,* 94 Wis.2d 450, 461, 289 N.W.2d 570, 576 (1980) ; *Jordan v. State,* 93 Wis.2d 449, 468, 287 N.W.2d 509, 517 (1980) ; *Boyer v. State,* 91 Wis.2d 647, 667, 284 N.W.2d 30, 38 (1979). The requested instructions were properly denied.

## LEADING QUESTIONS

Shaffer claims that during the state's redirect examination of one of its expert witnesses, the defense objected to questions that were leading, but the court ruled that the state's expert became a defense witness following cross-examination, and denied the defendant's motions to strike and for a mistrial. Shaffer argues that this ruling was clearly contrary to sec. 906.11(3), Stats., and therefore denied the defendant his right to a fair and impartial jury trial.

Shaffer does not identify the expert witness or the nature of his or her testimony. He does not state which questions were objected to, or the answers to the questions which allegedly prejudiced the defendant. He also cites no legal authority specifically supporting the relevant propositions. The argument is supported merely by a general citation to four pages from the record where the trial court denied a motion to strike concerning this unspecified earlier testimony.

Such an appellate argument is inadequate and does not comply with sec. 809.19 (1) (e), Stats.[3] In the future this court will refuse to consider such an argument, or summarily affirm on this issue. Sec. 809.83 (2).[4]

We will attempt to approximate the relevant part of the record. On cross-examination of one of the state's experts, Dr. Lawrence Clowry, defense counsel attempted to establish that Shaffer could have been intoxicated at the time of arrest without any visible effect on his bodily or "motor functions." Dr. Clowry admitted on cross-examination that a person under the influence of drugs and alcohol could be "biologically depressed" from intoxication, but yet be "psychologically up," and appear coherent and responsive.

On redirect examination, the state attempted to establish that any effects from drugs and alcohol taken the evening before would have worn off by the time of arrest:

Q   And I believe you also testified then it normally takes about six hours for the drug to totally wear off?
A   It would probably take six to eight in some individuals, a greater time again depending on how rapidly it was absorbed. If it is rapidly absorbed, it is usually

---

[3] Section 809.19 (1) (e), Stats., provides in part:

The argument on each issue must be preceded by a one sentence summary of the argument and is to contain the contention of the appellant, the reasons therefor, with citations to the authorities, statutes and parts of the record relied on as set forth in the Uniform System of Citation.

[4] Section 809.83 (2), Stats., provides:

NONCOMPLIANCE WITH RULES. Failure of a person to comply with a requirement of these rules, other than the timely filing of a notice of appeal or cross-appeal, does not affect the jurisdiction of the court over the appeal but is grounds for dismissal of the appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel, or other action as the court considers appropriate.

rapidly lost. It depends a great deal on the general physical status because the drug is detoxified and excreted and it depends a great deal on their function. There are a lot of functions involved, but generally that's what I would say, yes.

Q  If a person builds up a tolerance, could that duration time lessen?

A  It would be expected to lessen.

Q  So then the peak time may be less than an hour or two and the ultimate duration time may be less than six to eight hours?

MR. LeBELL: I object. It's leading. This is direct.

The court ruled that the expert's answers on cross-examination had effectively made him adverse to the state, stating:

THE COURT: Well, at this point, Counsel, I think that midway through this he has become your expert as to the second phase, so I will allow Counsel.

Although the general rule is that leading questions are ordinarily not to be used in direct examination, an exception exists where they are "necessary to develop [the witness's] testimony." Sec. 906.11(3), Stats. The trial court could have allowed the leading questions if, in its discretion, it found that the nature of the question was necessary. Moreover, under Wisconsin law the testimony of a witness may be tested by the party calling him. Sec. 906.07. Since we do not judge the trial court's highly discretionary ruling to have amounted to a due process denial, we will not substitute our judgment for that of the trial court. See Kozik v. Czapiewski, 136 Wis. 70, 72, 116 N.W. 640, 641 (1908). McCormick, Evidence, §6, at 9 (2d ed. 1972). The ruling of the trial court is affirmed.

## CLOSING ARGUMENT

Finally, Shaffer argues that the judgment of conviction should be vacated because of an allegedly improper

remark made by the prosecutor. During summation the prosecutor made the following statement to the jury: "In particular Scott Shaffer needed $400 to pay off a drug dealer and he was afraid he was going to be killed the next day if he didn't have the money." Defense counsel immediately moved to strike on the basis that there was no evidence in the record to support such a remark. The trial court sustained the objection, ordered that portion of the argument stricken from the record, and instructed the jury to disregard the statement.

Reference to other misconduct of the defendant not of record is highly improper argument and should be avoided. *United States v. Guajardo-Melendez,* 401 F.2d 35, 40 (7th Cir. 1968); *Stimack v. Texas,* 548 F.2d 588 (5th Cir. 1977). The trial court's immediate instruction to the jury to disregard that portion of the argument, however, mitigates the effect of the impropriety. *State v. Dombrowski,* 44 Wis.2d 486, 506, 171 N.W.2d 349, 360 (1969). *Isaacs v. United States,* 301 F.2d 706, 736 (8th Cir. 1962). Given the curative effect of that instruction, the prejudice resulting from the argument does not rise to the magnitude of reversible error.

*By the Court.*—Judgment affirmed.