City of Madison, Plaintiff-Respondent,
v.
Jeffrey Crossfield, Defendant-Appellant.
No. 04-1052.
Court of Appeals of Wisconsin.
Opinion Filed: December 16, 2004.
¶1 DYKMAN, J.[1]
Jeffrey Crossfield appeals from two orders of the circuit court for Dane County. The first order affirmed a decision and order of the Municipal Court for the City of Madison and the second denied Crossfield's motion to reconsider the first order.
¶2 Crossfield owns an Iveco truck with a cargo box. He and the City stipulated that the truck weighs 7200 pounds empty. A city zoning inspector testified that Crossfield parked the truck at Crossfield's residence on eight dates. A Madison ordinance prohibits off-street parking of certain vehicles:
(a) Utilization.
1. In the residence district, accessory off-street parking facilities provided for uses listed herein shall be solely for the parking of passenger automobiles (including passenger trucks) and bicycles of patrons, occupants, or employees. Such vehicles are limited in size to less than one (1) ton in capacity.
MADISON, WIS., GEN. ORDINANCES (MGO) § 28.11(3)(a)1.
¶3 Crossfield previously appealed from a judgment affirming the same Madison Municipal Court which had concluded that he was guilty of violating the same ordinance by parking the same truck on the same residential premises. Judge Deininger affirmed that case, City of Madison v. Jeffrey Crossfield, No. 02-3252, unpublished slip op. (WI App. Sept. 25, 2003).
¶4 Crossfield (1) asks that we correct the record, (2) raises seven "omnibus" issues and (3) raises a "second" issue. We will first address his request to correct the record and then consider the omnibus issues and the second issue.

Request to Correct the Record
¶5 Crossfield asserts that a certain letter and a modification of a municipal judge's order are not of record, and asks us to "find out why these documents were omitted from the record." The reason the documents are not in the record is because Crossfield did not move the circuit court for an order supplementing or correcting the record. See WIS. STAT. § 809.15(3). The same is true for Crossfield's assertion that the municipal judge's phrase "the last time" was unsupported by the record. If Crossfield disagreed with these parts of the record, it was his responsibility to ask the circuit court to correct the record.

"Omnibus" issues

Issue I
¶6 Crossfield asserts that the City of Madison is required by MGO § 3.42(4) to respond to written questions in writing within forty-eight hours. He alleges that a city employee did not follow the ordinance. He proposes that we prohibit the city from collecting fines when it does not follow its own ordinances. We decline the invitation. Crossfield gives no authority for his proposal, and we know of none. What Crossfield wants is a legislative determination. He should submit his proposal to the legislative branch, the Madison Common Council. Courts are bound by statutes, ordinances, administrative rules and previous cases, called precedent. We are not free to invade the territory of the legislative or executive branches of government. If some authority for Crossfield's proposal exists, he has failed to explain it to us. The long-held rule is that if an appellate litigant fails to cite legal authority specifically supporting a relevant proposition, we will refuse to consider the argument. State v. Shaffer, 96 Wis. 2d 531, 545-46, 292 N.W.2d 370 (1980). We follow that rule here.
¶7 As a second part of Issue I, Crossfield argues that the reserve circuit judge did not understand that this was a separate case from Crossfield's previous case, and did not understand the issues of this trial. Crossfield need not be concerned with what the reserve circuit judge did or did not do. We do not review the actions of the circuit judge. Village of Williams Bay v. Metzl, 124 Wis. 2d 356, 362 n.7, 369 N.W.2d 186 (Ct. App. 1985). We only review what the municipal court did or failed to do. Thus, Crossfield's assertions of circuit court error are irrelevant. He is now getting a review identical in every way to the review that he believes was deficient. We understand that this case and his previous case are not the same case.

Issue II
¶8 Crossfield argues that the circuit court's decision violated his right to a "pointed decision." As we explained above, the circuit court's decision is irrelevant. The question is not whether the circuit court erred but whether the municipal court erred. So far, Crossfield has made no complaints of any municipal court error.

Issue III
¶9 Crossfield contends that the circuit court erred by relying on a decision that did not reflect the issues of the trial in this case. Once again, we conclude that whether the circuit judge was correct or whether it erred is irrelevant. We will address any issues having to do with the only relevant matter in this casewhether the municipal court erred in whatever it did or failed to do.

Issue IV
¶10 Crossfield asserts: "If the appeals court rules that I cannot have consideration of the issues of this trial, I request the relief of having this ruling overturned and/or thrown out." We are not ruling that Crossfield cannot have consideration of the issues of this trial. We are holding exactly the opposite. We will review any assertion of municipal court error that Crossfield raises. While we disagree with several of Crossfield's assertions of error, we have and will consider all of them.

Issue V
¶11 Crossfield again complains of circuit court error. He contends that since the circuit court only affirmed the decision of the circuit court in Crossfield's previous case, there was no review in this case. We reiterate what we have held in issues one through four. Whether the circuit court erred or did not err is not relevant. That is what we said in Village of Williams Bay, a case we follow today. Indeed, we are required to follow our decision in Village of Williams Bay. See Cook v. Cook, 208 Wis. 2d 166, 560 N.W.2d 246 (1997). We also consider this issue for issues four and five as Crossfield requests. But our decision is the same.
¶12 As part of Issue V, Crossfield notes: "This brings us to the initial ruling for this case that of municipal court Judge Shelly Gaylord." We agree that issues arising out of the municipal court are the relevant ones for this appeal. Though Crossfield asserts in passing that his truck has less than one ton capacity and less cargo volume per passenger than other personal use vehicles and has four wheels rather than six, that is the extent of his argument. Again, he cites no statutes, administrative rules, ordinances, court cases or other authority showing that vehicles with these characteristics are less than "one ton in capacity" We repeat that we do not consider arguments that fail to cite to legal authority. Shaffer, 96 Wis. 2d at 545-46.
¶13 But Crossfield does identify the issue of the number of days that formed the basis for his forfeiture of $10.00 per day for a period of 116 days. He takes issue with the municipal judge's finding that "[t]here is no dispute that the vehicle was parked on the residential lot for the dates alleged." Crossfield is correct. There was a dispute. At the opening of Crossfield's trial before the municipal court, Crossfield responded to the court's question as to which dates he agreed the truck was parked on his residential property: "September 17 is the only date I agree with."[2] Shortly after that, Crossfield asked the court: "Now they have to establish which days it was there, correct? The trial court answered: "Yes." Later, the following occurred:
City Attorney, [of zoning inspector]: If Mr. Crossfield were using the Iveco back in 2001 as a, well, to drive himself around or to make any deliveries, using it for any purpose, is it reasonable, based on your experience, with this property to assume that the vehicle was parked there each evening or each day when Mr. Crossfield would return?
Crossfield: Didn't I already object in this area?
Judge [to city attorney] : Well, I know what you're trying to do. You're trying to show that the period alleged can be proven, right?
City Attorney: Right.
Judge: It's tough to do that if he wasn't there.
City Attorney: Right.
Judge: And I don't think you're going to, I don't think that question establishes enough of a foundation for that. On the other hand, if you do prove it for whatever dates he was there, if you prove it, you have [the] penalty range to work with. Okay?
City Attorney: Okay. All right.
Crossfield: Boy, is that clear.
Judge: It is.
City Attorney: It's clear, yes. Okay, I have no further questions for this witness.
¶14 The city established that the zoning inspector viewed the Iveco truck parked on Crossfield's property on eight dates, June 5, 2001, August 21, 2001, September 6, 2001, September 17, 2001, September 28, 2001 and March 26 to 28, 2002. The Municipal Court's order found Crossfield guilty of violating MGO 28.11(3)(a)1 on 116 days. The only vehicle mentioned in the municipal court's order was the Iveco truck.[3]
¶15 The total days of alleged violation would appear to be eighty-seven, including the three days of alleged violations in 2002.[4] But the trial court determined that the City's method of proving the number of days of violation lacked a foundation. And the City Attorney agreed that rather than try to produce further evidence as to the number of violations, she would, as the judge suggested, use the penalty range to achieve the City's desired result as to total forfeiture. Ultimately, however, the City Attorney did not request a significant penalty for each day the zoning inspector saw Crossfield's truck parked at his house.
¶16 Whether we conclude that the City abandoned its attempt to show more than eight days of violation, waived its right to do so, is judicially estopped from now asserting 116 days of violation, or the evidence was insufficient to convict Crossfield for more than seven days, the result is the same.[5] The City is entitled only to the forfeiture imposed by the municipal court for seven days, at $10.00 per day, or $70.00 plus costs.

Issue VI
¶17 Crossfield repeats the arguments as to days of violation which we have addressed above. We need not address the issue again.

Issue VII
¶18 Crossfield argues several issues in Issue VII. He first contends that his truck has less than one ton capacity based on volume. He does not explain what this means, or how he arrives at his conclusion. He fails to offer any authority for his proposition. Even pro se litigants are required to explain themselves sufficiently so that a reviewing court can understand the rudiments of an argument. Crossfield's "capacity based on volume" argument is inadequately briefed. We decline to consider it. See Hempel v. City of Baraboo, 2003 WI App 254, ¶23 n.7, 268 Wis. 2d 534, 674 N.W.2d 38.
¶19 Crossfield relies on a definition of a large motor truck found in MGO § 12.111. This ordinance regulates trucks on State Street in Madison. Crossfield does not live on State Street. Whatever the definition of a large truck is for State Street, it has nothing to do with whether Crossfield violated MGO § 28.11(3)(a)1. He next asserts that he remanufactured his truck when he removed two of its six wheels and tires from it. But he tried and failed with this argument the last time he appealed a conviction to this court. See Crossfield, No. 02-3252, unpublished slip. op., ¶¶14-22. The truck was the same, the ordinance was the same, the defendant and plaintiff were the same, and the issue was the same or at least similar to the argument he makes today. We conclude that claim preclusion applies, and that Judge Deininger's opinion in Crossfield precludes Crossfield from again advancing the same argument or any argument that might have been litigated in the previous case. See Beloit Liquidating Trust v. Grade, 2003 WI App 176, ¶15, 266 Wis. 2d 388, 669 N.W.2d 232, rev'd on other grounds, 2004 WI 39, 270 Wis. 2d 356, 677 N.W.2d 298.

"Second" Issue
¶20 Crossfield identifies as "Issue 2" his assertion that MGO § 28.11(3)(a)1 is unconstitutionally vague. But, as we explained above in relation to Crossfield's "remanufactured truck" argument, the alleged unconstitutional vagueness of the ordinance was decided against Crossfield in Crossfield, No. 02-3252, unpublished slip op. The doctrine of claim preclusion prevents Crossfield from raising this issue again.[6]
¶21 Crossfield argues that because in his previous case, Judge Deininger did not determine that the ordinance was unconstitutionally vague, Judge Deininger only determined that Crossfield had no standing to raise the issue. Crossfield concludes that something has changed; his truck is no longer "clearly in violation of the ordinance." But again, Crossfield fails to explain why this is so. Both cases involve the same truck, the same plaintiff and defendant, and the same issuean alleged unconstitutional ordinance. The most Crossfield does to explain why facts are different is to write: "I propose that this block of consideration no longer exists." He does not explain this enigma. We have no idea what a "block of consideration" is, and Crossfield points to no fact that has changed. If what he means is that Judge Deininger did not reach his issue, he fails to explain why the same result should not occur here. If Crossfield lacked standing previously, he has inadequately explained why he has standing now.
¶22 We therefore affirm in part and reverse in part. We remand to the circuit court with instructions to file an amended judgment of conviction if it concludes that its standard of review permits it to do so. If the circuit court does not so conclude, it should remand to the municipal court for further proceedings consistent with this opinion.
By the Court.  Orders affirmed in part; reversed in part and cause remanded with directions.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(b) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Crossfield was convicted of violating MADISON WIS. GEN. ORDINANCE (MGO) § 28.11(3)(a)1 on September 17, 2001, in his previous case, ultimately affirmed by Judge Deininger. Crossfield therefore agreed to nothing that is relevant to this case.
[3] The City concedes that the trial court effectively found Crossfield not guilty of parking another truck on his property, and does not appeal this finding.
[4] Among the dates that the City charged Crossfield with violations were August 22, 2001, to September 28, 2001. That includes September 17, 2001, the date applicable to Crossfield's previous conviction. See City of Madison v. Jeffrey Crossfield, No. 02-3252, unpublished slip op. ¶23 (WI App Sept. 25, 2003). Thus, the proper number of days for which Crossfield was at risk appears to be eighty-six, not eighty-seven. We also note that the complaint, which alleged the various dates of violation, was subscribed and sworn to on April 17, 2001, long before the dates Crossfield was alleged to have violated the ordinance. We are unable to determine the significance of this anomaly.
[5] Crossfield was already convicted of violating MGO § 28.11(3)(a)1 in his previous case. The City does not contend that he can be convicted a second time for violating MGO 28.11(3)(a)1 on September 17, 2001.
[6] However, we invite the City of Madison to consider whether MGO § 28.11(3)(a)1 should be amended. Another litigant might argue that as written, the ordinance applies to bicycles of more than one ton in capacity. The ordinance does not define "passenger trucks" and does not distinguish between passenger trucks and trucks which are not passenger trucks. Some trucks cannot carry passengers. All trucks have at least one passenger, the driver. The term "one (1) ton in capacity" might mean what Judge Deininger concluded it meant in Crossfield, No. 02-3252, unpublished slip op., which is the City's view of the meaning of the ordinance. But the ordinance is more likely referring to a trade or street definition of trucks which has little to do with the weight of the load the truck can carry or is designed to carry.

For example, a vehicle commonly referred to as a two-wheel drive, three-quarter ton Chevrolet Suburban, has a Gross Vehicle Weight Rating of 8600 pounds for the 1991 model. The empty vehicle weighs 5360 pounds. The load capacity of the vehicle is therefore 3240 pounds. The vehicle is thus well over one ton in capacity. Under the City's interpretation of MGO § 28.11(3)(a)1, this vehicle cannot be legally parked in a residence district. This Suburban is the same external size as a one-half ton Suburban, and is nearly indistinguishable from the 1/2 ton vehicle other than trim which reads "2500" on the three-quarter ton vehicle and "1500" on the one-half ton model. See www.chevrolet.com/suburban to view vehicles described as one-half ton and three-quarter ton Suburbans.
A one-half ton suburban, in a 1992, four-wheel drive configuration has a 7200 pound gross vehicle weight rating and an empty weight of 5460 pounds, permitting its owner to legally park it in a residence district. The two-wheel drive version may well be over a ton in capacity because the weight of four-wheel drive equipment almost certainly exceeds 260 pounds. Suburbans are probably not the only vehicles with these weight characteristics. And "HD" threequarter ton trucks, almost indistinguishable from one-half ton trucks but with gross vehicle weight ratings exceeding 9000 pounds, further complicate the issue.
If the intent of the Madison City Council is to prevent the owners of three-quarter ton Suburbans and the owners of many three-quarter ton trucks from parking them at their residences, it would seem only fair to publicize that fact for the benefit of those who wish to conform to the requirements of the ordinance.